Thomas B. Harvey (SBN 287198)
**Law Offices of Thomas B. Harvey**
365 E. Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805)768-4440
Email: tbhlegal@proton.me

Ben Gharagozli (SBN 272302)
**Law Offices of Ben Gharagozli**
7655 Winnetka Avenue, #2010
Winnetka, CA 91306
Telephone: (310) 272-9211
Facsimile: (855) 628-5517
Email: ben@lobglaw.com

Mark Kleiman (SBN 115919)
**Kleiman/Rajaram**
12121 Wilshire Blvd., Suite 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Email: mark@krlaw.us

Attorneys for Named Defendants

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christian and Jewish Alliance Inc., a California not-for-profit corporation, Ezra Ministries, a California not-for-profit religious corporation, d/b/a The Mission Church, and Ruth Mastron,<br><br>*Plaintiffs,*<br><br>v.<br><br>Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, Maya Karalius, and Does 1-40,<br><br>*Defendants.* | Case No. 3:25-cv-02992-W-AHG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. ANDREW G. SCHOPLER<br><br>Date: June 1, 2026<br><br>Time: 10:00 am<br><br>Location: Edward J. Schwartz United States Courthouse 221 West Broadway San Diego, CA 92101 |

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** June 1, 2026 at 10:00 AM in the above entitled court located at Edward J. Schwartz United States Courthouse at 221 West Broadway, San Diego, CA 92101, Defendants, Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, and Maya Karalius ("Named Defendants") will and hereby do move to dismiss the First Amended Complaint filed by Plaintiffs Christian and Jewish Alliance Inc., Ezra Ministries, a California not-for-profit religious corporation, d/b/a The Mission Church, and Ruth Mastron on March 23, 2026.

This motion is based upon Fed. R. Civ. P. 12(b)(1) and 12(b)(6), this Notice of Motion, the attached Memorandum of Points & Authorities, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated:  April 7, 2026

LAW OFFICES OF THOMAS B. HARVEY

By: _____
Thomas B. Harvey

LAW OFFICES OF BEN GHARAGOZLI

By: ___*/s/ Benham Gharagozli*___
Ben Gharagozli
Attorneys for Named Defendants

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................……1

II.  FACTS ALLEGED .................................................................................3

III. STANDARDS OF REVIEW ..................................................................6

IV. ELEMENTS OF THE FACE ACT ......................................................7

V.  ARGUMENT .........................................................................................8

    A.  Plaintiffs' FACE Act Claim Must Be Dismissed Because No Named Defendant Used Force, Threats of Force, or Physical Obstruction .............8

        1.   **March 19, 2025** .......................................................................9

        2.   **April 20, 2025**.......................................................................10

        3.   **September 7, 2025** ................................................................11

        4.   **Defendants' Speech at All Three Events Is Protected by the First Amendment and Cannot Be Deemed a True Threat** ........................13

    B.  The September 7 Event Was Not at a Place of Religious Worship.........15

    C.  As an Additional and Alternative Basis for Dismissal, Plaintiffs Cannot Establish the Specific Intent Element the FACE Act Requires .............16

        1.   **March 19: Outside Defendants Lacked Any Basis to Know Religious Exercise Was Occurring; Inside Defendants' Purpose Remained Directed at the Speaker's Remarks, Not at Worshipers as**

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**Worshipers**................................................................................. 18

    a.   *Outside Defendants: The Public-Facing Promotion of the Event Was Entirely Political* ....................................................................18

    b.  *Inside Defendants: Force Was Not Deployed to Interfere With Religious Exercise, and the FACE Act's Nexus Requirement Remains Unsatisfied*.......................................................................19

    2.   **April 20: Defendants' Political Opposition Does Not Transform Into FACE Act Intent Simply Because It Occurred on Easter** .................20

    3.   **September 7: Defendants' Protest Was Political, Not Religious**........21

D.  **The FAC's Group Pleading Fails as to Each Named Defendant Individually**........................................................................................22

    1.   **Maya Karalius and Aimée Werth Should Be Dismissed Because Their Alleged Individual Conduct Consists Entirely of Protected Expression**........................................................................................22

    2.   **Sasha Miller**.........................................................................................23

    3.   **Provance**...............................................................................................24

    4.   **Kristina Turner-Brown, Patrick Hartley, and Jacob Pagaduan**......24

    5.   **Reverend Daniel Brunner**.................................................................26

E.   **The Conspiracy Claims Against Defendant Brunner Must Fail**............26

    1.   **Civil Conspiracy Requires Specific Agreement, Not Mere**

iv

**Association** ...................................................................................27

2.    **Plaintiffs' Facilitation Theory Fails** ........................................28

F.    **Plaintiff Mastron Lacks Standing to Assert Claims Arising From the March 19 and April 20 Events** ...............................................29

**CONCLUSION** ...............................................................................30

**RULE 5 CERTIFICATE OF COMPLIANCE** ..........................................31

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................6, 27

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) ........................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................6, 27, 28

*City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191 (2011)..........................27

*Counterman v. Colorado*, 600 U.S. 66 (2023)......................................................12, 14

*Davis v. United States*, 343 F.3d 1282 (10th Cir. 2003) ............................................29

*Gerber v. Herskovitz*, 14 F.4th 500 (6th Cir. 2021) .............................................13, 23

*Jingrong v. Chinese Anti-Cult World Alliance Inc.*,
16 F.4th 47 (2d Cir. 2021)…………….....................................................................15

*Kindschy v. Aish*, 412 Wis. 2d 319 (Sup. Ct. Wis. 2024) ..........................................14

*Laughon v. Int'l Alliance of Theatrical Stage Empls.*,
248 F.3d 931 (9th Cir. 2001)......................................................................................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................7, 29

*NAACP v. Clairborne Hardware Co.*, 458 U.S. 886 (1982).........................13, 27, 28

*New Beginnings Ministries v. George*,
2018 WL 11378829 (S.D. Ohio 2018)...............................................8, 10, 16, 17, 18

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002)....................................................................................13

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................30

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)....................3, 7, 12

*Taking Offense v. State of California*, 66 Cal. App. 5th 696 (Cal. 2021) .................13


**Statutes**

18 U.S.C. § 248 (Freedom of Access to Clinic Entrances Act) ........................ passim

18 U.S.C. § 248(a)(2) ....................................................................... passim

18 U.S.C. § 248(d)(1)...................................................................1, 23

18 U.S.C. § 248(e)(2) .................................................................8, 11, 15,

18 U.S.C. § 248(e)(4) .......................................................................12

Fed. R. Civ. P. 12(b)(1)....................................................................30

Fed. R. Civ. P. 12(b)(6)....................................................................3, 7

**Other Authorities**

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993) ...................................1, 25

Arianne K. Tepper, In Your F.A.C.E.: Federal Enforcement of the Freedom of
Access to Clinic Entrances Act of 1993, 17 Pace L. Rev. 489 (1997)..............7 (fn. 1)

H.R. Conf. Rep. No. 103-488, 9 (1994) ................................................9,15

S. Rep. 117, 103d Cong. 1st Sess. 31 (1993) .............................................8

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## I.   INTRODUCTION

The Freedom of Access to Clinic Entrances Act ("FACE Act") prohibits using force, threats of force, or physical obstruction to intentionally injure, intimidate or interfere with (or attempt to do so) any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship. 18 U.S.C. § 248(a)(2). The statute expressly exempts expressive conduct protected by the First Amendment. 18 U.S.C. § 248(d)(1).

The law's plain language does not prohibit protesting a political speech about Israel, even if it is hosted by a church. 18 U.S.C. § 248(a)(2)'s sponsor stated the "religious exercise" proposal would "do no more than give religious liberty the same protection that [the FACE Act] would give abortion," and would address recent violence, including a protest where activists entered a facility during prayer and threw things at the congregants, and a series of arson attacks against churches. 139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993).

Plaintiffs' FACE Act cause of action should be dismissed for two independent reasons. First, the First Amended Complaint ("FAC") does not allege that Named Defendants used force, threats of force, or physical obstruction to intentionally injure, intimidate or interfere with Plaintiffs' right of religious freedom at a place of religious worship. Second, the FAC does not allege that Named Defendants' conduct was intentionally directed at persons exercising religious freedom.

- 1 -
DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

On conduct, the FAC's own allegations establish that Named Defendants protested on public sidewalks, used bullhorns, carried signs, and marched—quintessential protected expression that does not meet the statute's specific definitions of force, threat of force, or physical obstruction.

On intent, the FAC quotes Defendants' own words establishing political, not religious, motivation. Plaintiffs repeatedly concede that Named Defendants protested across the three events against Plaintiffs' pro-Israel political positions, not because they were trying to undermine religious freedom.

The FAC quotes Werth explaining in real time why Defendants protested the September 7 event: "[T]hey were in there, feasting, listening to music, and raising money for genocide . . . [W]e will not give them a moment of peace. Free Palestine." (FAC ¶ 171). The FAC likewise quotes Miller's Instagram post, accusing the Church of "hiding behind religion to justify [I]srael['s] genocide on Palestine." (FAC ¶ 107). These are statements of political opposition, not intent to interfere with religious exercise.

Defendants protesting the views of a featured speaker who is a former politician and a self-described atheist (RJN, Exhibit A) who gave a talk about a hot button political issue, (FAC ¶¶ 75, 86) does not constitute an intent to interfere with religious exercise. Their intent is directed at the content of the speaker's political remarks, not religious worship. The statute requires intentional interference with

religious exercise; it does not immunize political speech from protest simply because the proponents of a particular position strongly believe that their political views have religious support.  To hold otherwise would be to undermine fundamental notions of separation of church and state. Where the complaint's own allegations negate an essential element of the claim, dismissal under Rule 12(b)(6) is required. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## II.    FACTS ALLEGED

**March 19, 2025.** The Mission Church co-hosted a speaking engagement featuring Dr. Einat Wilf, described as "a former member of the Israeli Knesset, a renowned scholar, and an expert on the current conflict in the Middle East." (FAC ¶ 76.) She also describes herself as an atheist.  (RJN, Ex. A)

The title of Dr. Wilf's speech was "Exploring Israel's Statehood & the Palestinian Refugee Issue." (RJN, Exhibit B). The public promotion did not convey information about religion. *Id.* Any person deciding whether to attend or protest this event, solely based on its public description, would have no reason to understand it as a religious event or that protesting in opposing to the political speaker's political opinions would somehow undermine religious worship.  Objective opinions aside, political protest does not undermine religious worship.

Brunner and Does 1-16 are alleged to have protested on the public sidewalk outside the Church.  (FAC ¶ 87)  Separately, Named Defendants Turner-Brown,

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Pagaduan, Hartley, and Miller and several Does pre-registered and entered the building, where each protested Dr. Wilf's political speech and were subsequently escorted outside by security. Miller is alleged to have hit an attendee in response to that person putting their hands on her.  (FAC ¶¶ 96-107)

**April 20, 2025.** Brunner and approximately thirty others, including Does 21–25, stood on a public sidewalk on the opposite side of a four-lane street, at least 60 feet from the Church. They held signs and used bullhorns. After Church staff called the police, an officer arrived and told them to remain on their side of the street, which they did.  Turner-Brown and Hartley stood on the narrower sidewalk next to the Church's front door. (FAC ¶¶ 137-141) The FAC does not allege that either Turner-Brown or Hartley physically struck any person, entered the Church, or kept anyone else from entering.  No one was arrested, detained, or cited. Nobody was prevented from practicing their faith either.

Although the FAC alleges that some people were blocked from reaching their vehicles, that conduct is not alleged against the Named Defendants.  (FAC ¶ 142). What is more, paragraph 143 clarifies paragraph 142.  Specifically, it does not appear that people were in fact *prevented* from reaching their vehicles in the overflow parking, but rather that on the way to their vehicles, they had to listen to political opinions that may have differed from theirs.  (FAC ¶ 143).

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**September 7, 2025.** The Christian & Jewish Alliance (CAJA) hosted a political event with the express purpose of helping attendees learn "how to support Israel." (FAC ¶ 153).  CAJA rented an outdoor amphitheater at the Legacy International Center ("The Legacy") in Mission Valley for a single afternoon event. The Legacy is a commercial facility with hotel rooms, a bar, a swimming pool, a sauna, and a spa. (RJN, Exhibit D). Although the Legacy offers a Prayer Room and a Garden Sanctuary, Plaintiffs' rented the Legacy Grand Plaza which it calls "a blank canvas for all types of events such as concerts, wedding diners, networking mixers, church services, etc." (RJN Exhibit C)

The FAC itself acknowledges Defendants' political motivations for protest on September 7th, (FAC ¶¶ 171, 178, 189, 203, 205, including Image 6 on p. 28 depicting a large flag of the state of Israel at the event).

As with the April 20th event, the FAC first makes aggressive allegations and then walks them back.  First, Plaintiffs allege that Defendants made arrangements that resulted in "precluding worshipers from entering" and "blocked the entrance to the parking area near the amphitheater."  (FAC ¶¶ 174, 175) Then, the FAC clarifies that entry was allowed but guests had to drive "very slowly to enter the property in order to avoid hitting any disruptors".  (FAC ¶ 177) Later, Plaintiffs complain that guests had to run over "two dolls resembling infants" to enter.  (FAC ¶ 186)

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Of the Named Defendants, Provance is alleged to have filmed arriving guests and struck vehicles with his hands.  (FAC ¶ 181) Miller, Turner-Brown, Werth, Provance, Karalius and Does 26-40 are alleged to have marched slowly and carried signs and bullhorns.  (FAC ¶ 176) Miller is alleged to have "repeatedly shoved her bullhorn into car windows and at attendees on foot while shouting at them." (FAC ¶ 180)  Some individuals who had pre-registered for the event decided to drive away while others decided to attend.  (FAC ¶ 187)

Named Defendants stationed themselves approximately thirty feet from the amphitheater and, for approximately three hours, made loud noises in protest of the political event.  (FAC ¶¶ 192-193) There is no allegation that the police issued a dispersal order or made arrests at the event.

The most serious conduct alleged against arriving guests was a person jumping onto the hood of Plaintiff Mastron's car and slamming the windshield (FAC ¶ 182), and that act is attributed to Doe 26. (FAC ¶162). No Named Defendant is alleged to have jumped on a car or physically touched any person attempting to enter the venue.

## III.   STANDARDS OF REVIEW

To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Conclusory allegations, unwarranted inferences, and group pleading that fails to identify each defendant's

- 6 -

specific conduct do not satisfy this standard. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *Bank of Am., N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013) (each defendant entitled to know specifically what conduct is alleged as wrongful). Where a complaint's own factual allegations negate an essential element of the claim, dismissal under Rule 12(b)(6) is appropriate. *Sprewell*, 266 F.3d at 988. Each plaintiff must independently establish Article III standing, including a concrete injury in fact, fairly traceable to defendant's conduct. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

## IV.    ELEMENTS OF THE FACE ACT

The FACE Act was passed in 1994, when women's health clinics were being bombed and doctors who worked there were being murdered. A far lesser-known provision in the bill protects places of worship. The law's "religious freedom" provision was added as a floor amendment during Senate debate and was never the subject of any Congressional hearing.[1] The cause of action has so seldom been invoked that case law interpreting this provision is scarce. Other circuits, however, have identified four elements required to plead a violation of 18 U.S.C. § 248(a)(2): "Plaintiffs must demonstrate that Defendants used or attempted to use (1) force,

---

[1]  Arianne K. Tepper, In Your F.A.C.E.: Federal Enforcement of the Freedom of Access to Clinic Entrances Act of 1993, 17 Pace L. Rev. 489 (1997)
DOI: https://doi.org/10.58948/2331-3528.1328
Available at: https://digitalcommons.pace.edu/plr/vol17/iss2/6

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

threat of force, or physical obstruction; (2) *with the intent to*; (3) injure, intimidate, or interfere with a person; (4) *because* that person is exercising or is seeking to exercise his or her right of religious freedom at a place of religious worship." *New Beginnings Ministries v. George*, 2018 WL 11378829, *15 (S.D.O.H. 2018) (emphasis added)

## V.    <u>ARGUMENT</u>

The FAC fails for five reasons: (1) no Named Defendant used force, threats of force, or physical obstruction as defined in § 248(e); (2) the September 7 venue was not a "place of religious worship" within the statute's definition; (3) no Named Defendant acted with the requisite intent to interfere with religious exercise; (4) the FAC engages in impermissible group pleading; (5) and the conspiracy claims against Defendant Brunner lack any specific factual basis. Further, Plaintiff Mastron's standing is limited to the September 7 event because there are no allegations that Plaintiff Mastron was even present for the March 19 or April 20 event.

### A.    **Plaintiffs FACE Act Claim Must be Dismissed Because No Named Defendant Used Force, Threats of Force, or Physical Obstruction.**

Subdivision (e)(2)(3)(4)'s narrow definitions of "Interfere with", "Intimidate" and "Physical obstruction" confirm that no such activity has been alleged against the Named Defendants. See also, S. Rep. 117, 103d Cong. 1st Sess. 31 (1993) (explaining that "physical obstruction" would include blockades, "chaining people and cars to entrances with bicycle locks," strewing nails on public roads leading to

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

clinics, and "blocking entrances with immobilized cars"); H.R. Conf. Rep No. 103-488, 9 (1994) (clarifying that physical obstruction would include, for example "physically blocking access to a church or pouring glue in the locks of a synagogue").

### 1. March 19, 2025

Even crediting the physical difficulty of navigating the sidewalk, the FACE Act's requirements remain unsatisfied.  Named Defendants were demonstrating against the Church's political position on Israel, not against an act of worship. Protest at a political event does not become a FACE Act violation simply because the event was hosted in a sanctuary. The statute requires a causal and purposive link between the obstruction and the target's religious exercise. The FAC does not allege that link. Rather, the FAC alleges Named Defendants expressed political opposition to political speech.

The FAC also alleges that Miller "hit the attendee" who tried to physically guide her out of the aisle. (FAC ¶ 107). This is framed by Plaintiffs as force against a worshiper rather than against security personnel.

The argument fails for two independent reasons.  First, the attendee who "tried to guide her out" was not a security officer but a fellow audience member who spontaneously placed his hands on her to compel her movement. Miller's reaction was directed at a person physically touching her, not at a person in the act of exercising religious freedom. The causal connection the statute requires, between

Miller's act and the victim's religious exercise, is absent: she did not strike the attendee because he was worshiping; she reacted to being physically touched. That is a critical distinction. The FACE Act federalizes only force used with the specific intent to injure, intimidate, or interfere with religious exercise. The FAC makes no claim that the attendee's act was a part of his religious exercise.  If Plaintiffs argument were to be adopted, any man could put their hands on a woman in a Church and file a FACE Act claim if the woman resists.  That is not and cannot be the law.

Second, even if this contact satisfied the force element, the intent element is independently unsatisfied for the reasons discussed above: her contemporaneous Instagram post the FAC cites establishes that her purpose was political opposition (the Church was "hiding behind religion to justify Israel's genocide"), not interference with religious exercise. The FACE Act's elements require specific, not general, intent. *New Beginnings Ministries,* WL 11378829 *15.  A reactive physical response to being physically grabbed and moved does not establish a violation of the FACE Act.

### 2. April 20, 2025

Plaintiffs fail to plausibly allege that Defendants physically made ingress or egress unreasonably difficult or hazardous; only that they demonstrated outside of the Mission Church on April 20, 2025, across the road from the Church, some 60 feet away and separated by four lanes of traffic, two sidewalks, and a median.  (FAC, ¶¶

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

138, 141). This could not be further from the church burnings and intentional, coordinated physical violence against parishioners that the FACE Act was intended to prevent. Protest from across four lanes of traffic—however provocative in content— does not constitute force, threat of force, or physical obstruction per the FACE Act.

### 3. September 7, 2025

The FAC's September 7 allegations against Named Defendants cannot satisfy any of Subdivision (e)(2)(3)(4)'s narrow definitions either. The most serious physical act alleged on September 7 is that a person jumped onto the hood of Plaintiff Mastron's car and hit the windshield, an act attributed to Doe 26 (FAC ¶¶ 162, 182). Doe 26 is not a Named Defendant. No Named Defendant is alleged to have jumped on a car or physically touched any person attempting to enter the venue. The attempt to attribute Doe 26's conduct to Defendant Brunner through conspiracy theories fails for the reasons addressed below, and cannot salvage the force element as to Named Defendants through group pleading alone.

The FAC's remaining physical allegations fall into two categories, neither of which satisfies the statute. First, Defendant Miller is alleged to have 'block[ed] attendees' path towards the event, crowding them off the sidewalk onto a busy street and screaming at them at point-blank range with a megaphone.' (FAC ¶ 190). But the FAC concedes that attendees 'managed to park their vehicles' and enter the venue despite Miller's presence. (FAC ¶¶ 192-196). Ingress that occurs despite alleged

- 11 -

crowding is not ingress rendered 'unreasonably difficult or hazardous' within the meaning of § 248(e)(4). And a megaphone used to shout political slogans at close range does not constitute a 'threat of force.' Rather, it communicates disapproval, not imminent physical violence. *Counterman*, 600 U.S. at 69

Second, Named Defendants collectively are alleged to have 'blared sirens imitating emergency vehicles and banged pots and pans' for approximately three hours from thirty feet behind the amphitheater. (FAC ¶¶ 192,193). Noise, however deliberate and sustained, does not constitute physical obstruction. It does not impede movement. The FAC itself confirms this: despite three hours of sirens, the event ran to completion and numerous attendees remained, some specifically to 'show solidarity.' (FAC ¶ 195). An event that concludes with attendees still present is not an event from which worshipers were obstructed. The physical harm Plaintiffs allege (ringing ears) may support a state tort claim but does not satisfy the federal obstruction standard the FACE Act requires. Wearing ear protection at a demonstration where one intends to use bullhorns and pots and pans establishes, at most, that Defendants anticipated producing loud noise.

Plaintiffs ask the Court to infer that anticipating noise one intends to make equals specific intent to cause bodily harm to listeners. This is an unreasonable inference that the Court need not credit at the pleading stage. *Sprewell*, 266 F.3d at 988 (courts need not accept "unreasonable inferences").

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs have therefore failed to allege any facts that can plausibly show Defendants used force, threats of force, or physical obstruction to interfere with his freedom of religion under the FACE Act, and the claim must be dismissed.

### 4. **Defendants' Political Speech at All Three Events is Protected by the First Amendment and Cannot Be Deemed a True Threat**

Because of the extremely wide berth the Constitution and the FACE Act itself gives to protected speech, the bar for *un*protected speech is quite high. The First Amendment protects "offensive and coercive speech," including "the use of speeches, marches, and threats of social ostracism." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1070 (9th Cir. 2002), *as amended* (July 10, 2002) (citing *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 933 (1982)).

Indeed, it is well established that even offensive speech is protected speech. *Taking Offense v. State of California*, 66 Cal.App.5th 696, 707 (Cal. 2021) ("Generally, the free speech clause protects a wide variety of speech a listener may find offensive, including insulting speech based on race, national origin, or religious beliefs.") *Gerber v. Herskovitz*, 14 F.4th 500, 504, 508–09 (6th Cir. 2021) (signs stating "Resist Jewish Power" during Shabbat services are First Amendment protected activity).

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Where Plaintiffs rely on a "threat of force" to plead a violation of the FACE Act, they must show that the threat was a "true threat", not subject to the First Amendment's protection. *Id.* at 1073 (providing that "FACE on its face requires that 'threat of force' be defined and applied consistent with the First Amendment").

Speech only becomes a "true threat" where "in the entire context and under all the circumstances, a reasonable person would foresee [it] would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Id.* at 1077. The Supreme Court recently recognized a recklessness *scienter* requirement for culpable true threats, such that the Defendant must have "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). *Counterman's scienter* requirement has also been applied to civil causes of action based on threats. *Id.* at 80-81. *See also Kindschy v. Aish*, 412 Wis.2d 319, 333 (Sup. Ct. Wis. 2024) (applying *Counterman*'s *scienter* rule to a civil dispute).

Plaintiffs do not plausibly allege that Named Defendants' statements are true threats such that they are unprotected by the First Amendment. Plaintiffs do not allege that Defendants' statements could be interpreted as a serious expression of intent to inflict bodily harm upon them, nor that Defendants knew of any substantial

- 14 -

risk of their communications being viewed as a threat of violence. As such, Plaintiffs fail to plausibly allege Defendants threatened force against them.

### B.  The September 7 Event Was Not at a Place of Religious Worship

Because Plaintiffs cannot satisfy the use of force element as to September 7 for the reasons stated above, the Court need not reach the question of whether the Legacy International Center qualifies as a 'place of religious worship' under 18 U.S.C. § 248(e)(2). Defendants nonetheless preserve that argument as an independent alternative ground for dismissal.

The FACE Act applies only to interference with religious exercise at "a place of religious worship." 18 U.S.C. § 248(a)(2) Although the statute does not define that term, the Second Circuit provides guidance—"anywhere that religious adherents collectively recognize or religious leadership designates as a space primarily to gather for or hold religious worship activities." *Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F.4th 47, 57 (2d Cir. 2021) The *Jingrong* Court cited the Joint Conference Report as "the most persuasive evidence" of congressional. *Id*. at 59. That report, which was prepared in conjunction with the FACE Act's passage asserts that the law only protects against conduct "occurring at or in the immediate vicinity of a place of religious worship, such as a church, synagogue, or other structure used *primarily as a place for worship*." *Id*. [citing H.R. Rep. No. 103-488, at 9 (Conf. Rep.) (1994)] (emphasis in original)

- 15 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

The Legacy International Center is a commercial hospitality facility. The Legacy's own website acknowledges it has hotel rooms, a swimming pool, a sauna, and a spa. (RJN, Exhibit D). Although the FAC characterizes the Center as "a Christian religious center," a facility established to accommodate paying guests was not 'established for the primary purpose of religious exercise' as the statute requires. (RJN, Exhibit D) The Alliance's single-afternoon rental of Legacy's outdoor amphitheater cannot satisfy the FACE Act.

And the Alliance's 'operational control of the worship service,' (FAC ¶¶ 151-152), does not bear on the statutory question, which asks what the place was established for, not who controlled a particular event programmed within it.

A church renting a hotel ballroom for a religious retreat does not transform the ballroom into a place of religious worship under § 248(e)(2). No Ninth Circuit decision holds otherwise, and the plain text admits only one answer.

The FACE Act claims arising from the September 7 event should be dismissed.

**C.  As an Additional and Alternative Basis for Dismissal, Plaintiffs Cannot Establish the Specific Intent Element the FACE Act Requires**

At least one District Court applying § 248(a)(2) has identified a requirement that defendants act with awareness of, or purpose to interfere with, persons exercising religious freedom. *New Beginnings Ministries*, 2018 WL 11378829 at *15. The Ninth Circuit has not resolved whether § 248(a)(2) requires defendants to have acted

- 16 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

specifically because targets are exercising religious freedom, or merely that they intentionally interfere with persons who happen to be doing so.

The Court need not resolve this question, because Plaintiffs fail under either reading. Under the *New Beginnings* formulation, Defendants' demonstrated political motivation defeats the intent element across all three events. Under the plain statutory text, Plaintiffs' claims independently fail because Named Defendants did not use force, threat of force, or physical obstruction at all, as established in Section A above. The Court should therefore dismiss on the conduct element without reaching the intent question. This section provides additional and alternative grounds.

Two legally distinct theories apply and should not be conflated. First, for defendants who protested based solely on an event's public-facing promotion, which contained no reference to religious exercise, the intent element fails because they lacked any basis to know that their conduct would fall on persons exercising religious freedom. Second, for defendants who were physically present during the event, the intent element still fails because their purpose was directed at the content of a featured speaker's remarks, not at the surrounding religious exercise as such. The FAC's own quoted words establish both propositions.

//

//

//

- 17 -
DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### 1.    March 19: Outside Defendants Lacked Any Basis to Know Religious Exercise Was Occurring; Inside Defendants' Purpose Remained Directed at the Political Speaker's Remarks, Not at Worshipers as Worshipers

a.    *Outside Defendants: The Public-Facing Promotion of the Event Was Entirely Political*

Brunner and Does 1–16 are alleged to have protested on the public sidewalk outside the Church throughout the evening. The event, "Exploring Israel's Statehood and the Palestinian Refugee Issue," featured Dr. Einat Wilf. Dr. Wilf was described as "a former member of the Israeli Knesset" and "an expert on the current conflict in the Middle East." (FAC ¶ 76)

The outside defendants' intent was established by what they knew: a public event description for a political speech that contained no reference to religious exercise. Their chants concerned Gaza, Palestinian refugees, and Israeli government policy. Nothing in the FAC supports the inference that they chose to protest to stop people from practicing their faith.

The relevant inquiry is what outside defendants could have understood from the information available at the time they chose to act, not what was occurring inside a building unknown to them. *New Beginnings Ministries*, 2018 WL 11378829, at *15. That the Church opened the evening with prayer before Dr. Wilf spoke does not

- 18 -

impute that knowledge to persons protesting based solely on the event's secular public advertisement. The intent element cannot be satisfied by retroactively imputing knowledge of events that defendants had no reason to anticipate from publicly available information.

b. *Inside Defendants: Force Was Not Deployed to Interfere With Religious Exercise, and the FACE Act's Nexus Requirement Remains Unsatisfied.*

Defendants Hartley, Turner-Brown, Miller, and Pagaduan entered the Church and were present for the political speech delivered by an atheist. The FAC alleges the event opened with prayer and included a period of worship. (FAC ¶¶ 82–83). While none of them had any reason to believe that Dr. Wilf's speech was religious in nature based on the public promotion of the political speech, they were physically present at this time.

Nonetheless, even accepting the allegations as true, the allegations fail to satisfy the FACE Act's intent element for a more fundamental reason: their protest was not performed with intent to interfere with that religious exercise. The "intentionally" element of § 248(a)(2) demands a specific causal connection between the defendant's conduct and the religious character of the targeted activity.

It is not enough that religious exercise was occurring in proximity to the defendant's conduct. Defendants must have intentionally directed their interference at

- 19 -

persons because of their religious exercise.  The FAC's own account establishes that the inside defendants' disruptions were directed at Dr. Wilf's political speech, which occurred after the prayer portion of the event (FAC ¶¶ 82-86). Each inside protester "began screaming epithets at the peaceful audience" and filming congregants at the moment "Dr. Wilf began speaking." (FAC ¶ 98). Defendant Miller's own Instagram video—which the FAC cites approvingly as evidence of her conduct—shows her shouting that the Church was "hiding behind religion to justify Israel's genocide on Palestine." (FAC ¶ 107) (internal brackets omitted). That statement reflects opposition to a political position, not intent to suppress religious worship.

Defendants who protest a political speech occurring within a church do not thereby act with intent to interfere with religious exercise. A protest timed to begin when the featured speaker started her remarks—not during the preceding prayer or worship—and accompanied by statements accusing the Church of hiding behind religion to advance a political position, establishes that the inside defendants' intent was directed at the content of political speech, not religious exercise.

**2.   April 20: Defendants' Political Opposition Does Not Transform Into FACE Act Intent Simply Because it Occurred on Easter.**

Defendants returned to the Mission Church on April 20, 2025 not because the day is holy, but because the Church had publicly aligned itself with Israeli

- 20 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

government policy in a manner that Defendants found politically objectionable. Defendants chanted about Gaza, Palestine, and genocide, not about Christian theology or Easter worship. Their motivation was unvarying political opposition to the Church's political stance on Israel.

Moreover, no Named Defendant is alleged to have physically blocked anyone's path to enter the Church, struck any person, or even entered Church property. The most physically proximate protesters were across four lanes of traffic and a median, more than 60 feet away. The absence of any force or obstruction element independently renders the April 20th allegations inapplicable to the FACE Act claim.

### 3. September 7: Defendants' Protest Was Political, Not Religious

The September 7 intent argument is stronger still, because the FAC does not merely fail to plead the required intent, it affirmatively pleads facts that negate it. The FAC quotes Defendant Werth's contemporaneous explanation of why Defendants chose to target the September 7 event: '[T]hey were in there, feasting, listening to music, and raising money for genocide . . . [W]e will not give them a moment of peace. Free Palestine.' (FAC ¶ 171).

Werth's statement describes a feast, a concert, and a political fundraiser. It makes no reference to religion, prayer, worship, or the religious beliefs of attendees. Her stated reason for targeting the event is political opposition to what she characterizes as financial support for a foreign government's military campaign. That

- 21 -

is the motivation the FAC itself attributes to Defendants, and it is a motivation that falls outside the FACE Act's reach.

This is not a case requiring the Court to weigh competing inferences about intent. The FAC quotes Defendants' own words describing their purpose in their own voice. Under either reading of the statute, the intent element fails as to September 7: even under the more demanding formulation requiring that defendants act because of targets' religious exercise, the FAC's own evidence defeats that element.

**D.      The FAC's Group Pleading Fails as to Each Named Defendant Individually.**

**1.      <u>Maya Karalius and Aimée Werth Should Be Dismissed Because Their Alleged Individual Conduct Consists Entirely of Protected Expression</u>**

The conduct individually alleged against each of these two defendants consists entirely of protected speech and expressive activity. Karalius is alleged to have marched slowly, held signs, chanted, used a bullhorn and posted an Instagram comment on a worshiper's visible religious attire (FAC ¶¶ 176, 193, 218); and Werth is alleged to have carried a sign that said "FCK NZIS", made amplified noise (through sirens, bullhorns, and banging pots and pans), and recruited protesters online (FAC ¶¶ 175, 188, 193-194, 225). Outside of Plaintiffs' impermissibly pled group allegations, not a single individualized allegation in the FAC against Werth or

Karalius constitutes force, a threat of force, or physical obstruction within the meaning of § 248(a)(2). Filming, chanting, carrying signs, using a bullhorn, and peaceable presence on or near a public sidewalk are quintessential First Amendment activity. *Gerber v. Herskovitz*, 14 F.4th 500, 504, 508–09 (6th Cir. 2021) (signs stating "Resist Jewish Power" during Shabbat services are First Amendment protected activity). The FACE Act explicitly exempts "peaceful picketing or other peaceful demonstration" as examples of activity from its reach. 18 U.S.C. § 248(d)(1). These two defendants should be dismissed with prejudice.

### 2. Sasha Miller

The FAC makes the following specific individual allegations against Miller: (1) she hit an attendee who tried to physically guide her toward the aisle during removal at March 19 (FAC ¶ 107); (2) she occupied the sidewalk during the March 19 protest  (FAC ¶¶ 119, 123); (3) she repeatedly shoved her bullhorn into car windows and placed it within inches of an elderly deaf man's ear on September 7th (FAC ¶ 180); and (4) she crowded an attendee off the sidewalk and followed him while screaming through a megaphone (FAC ¶ 190).

The attendee contact on March 19, 2025 was reactive and the intent element is negated by her own words that she was protesting due to political disagreement rather than religious infringement; the bullhorn conduct on September 7 does not constitute force or a true threat within the statutory definition; and the egress obstruction did not

- 23 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

render passage impossible or unreasonably difficult. Her own Instagram video, which is Plaintiffs' best evidence, shows political shouting, not violence.

### 3. Provance

The FAC alleges that Provance filmed arriving guests and "struck vehicles with his hands" as they approached the September 7th venue. (FAC ¶181). Even crediting this allegation, it fails on the intent element for the same reason all September 7th conduct fails: the FAC quotes Werth explaining that the target was a "political fundraiser" for genocide, not persons exercising religious freedom. (FAC ¶171). Provance's alleged conduct occurred in furtherance of that political protest objective, not with intent to interfere with religious exercise. Additionally, striking a vehicle is not force directed at "any person" within the meaning of § 248(a)(2). The statute reaches force against persons, not property.  Provance should be dismissed.

### 4.      Kristina Turner-Brown, Patrick Hartley, and Jacob Pagaduan

The force Turner-Brown, Hartley, and Pagaduan are alleged to have used was directed at private security personnel during removal, not force used to interfere with religious exercise.  The FACE Act punishes force deployed as an instrument to intentionally injure, intimidate, or interfere with persons *seeking to exercise religious freedom*. It does not federalize every act of physical resistance during a political protest that occurs at a location where some religious activity is also alleged to have previously taken place.

- 24 -

The FAC's own account makes clear that the force attributed to these three defendants was reactive: they resisted being physically grabbed and ejected by Church security. (FAC ¶¶ 102-110). Hartley is alleged to have "resisted by planting his feet and leaning his body against" the security team. (FAC ¶ 105).  That is a different act, with a different target and a different purpose, than the conduct the FACE Act was designed to prohibit. Congress enacted the FACE Act to address coordinated violence against worshipers in the form of firebombings, blockades, and targeted assaults on parishioners seeking to enter or leave houses of worship. See 139 Cong. Rec. S15660 (Nov. 3, 1993). Resisting forcible ejection by private security is not that. The statute asks whether defendants used force to injure or interfere with persons exercising religious freedom; it does not ask whether defendants used force while being physically removed from a political event they had entered to protest. The nexus required between the force and religious discrimination, is absent.

The specific allegations against each defendant are legally insufficient to satisfy the FACE Act's first element as to acts directed at worshipers. As to Pagaduan, the FAC concedes that "he leaped up" during Dr. Wilf's presentation, not during worship.  (FAC ¶¶ 103-108)  .

As to Turner-Brown, their individual conduct—shouting at and resisting security, and briefly returning to Church property—does not satisfy the force element of the FACE Act directed at worshipers.

- 25 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### 5.    Reverend Daniel Brunner

Brunner is alleged to have organized and directed all three events, protested on public property at each, threatened to return on Mother's Day, posted social media content, and served as a CODEPINK leader in San Diego. (See e.g. FAC ¶¶3-5, 87, 97, 118-121, 127, 132-133, 137-138, 147, 159-160, 193-194, 199, 211). Every act attributed to him directly involves public protest, speech, or online expression. The conduct of other defendants is attributed to Brunner only "on information and belief," without any specific factual allegation of how he directed those particular acts.  (See e.g. FAC ¶ 132)   As addressed in Section E below, that theory fails as a matter of law. Protesting on public sidewalks, holding signs, using a bullhorn does not satisfy the force or obstruction elements of the FACE Act. And Brunner's alleged role as an organizer would not transform protected conduct into FACE Act violations.

### E. The Conspiracy Claims Against Defendant Brunner Must Fail

Plaintiffs attempt to hold Defendant Brunner vicariously liable for every act of every Named Defendant and unnamed Doe defendant at all three events. The allegation is made on information and belief, based on the claim that unnamed individuals "asked [Brunner] for guidance," and that he "provided guidance". (FAC ¶¶147, 199). This is insufficient.

//

//

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## 1. Civil Conspiracy Requires Specific Agreement, Not Mere Association

Civil conspiracy requires: (1) an agreement between two or more persons to commit a tortious act; (2) a wrongful act committed pursuant to that agreement; and (3) resulting damages. *City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 211–212 (2011). The FAC fails at the first element. It does not allege when or how Brunner formed an agreement with any particular Doe defendant, what the specific terms of any agreement were, or how any specific Doe's conduct was carried out "pursuant to" that agreement. Conclusory assertions that Brunner "planned," "organized," and "coordinated," all offered "on information and belief," are precisely what *Twombly* and *Iqbal* prohibit.

Moreover, organizing a lawful protest is not a tortious act. Even if Brunner recruited participants, communicated logistics, and directed protesters' positioning on public property, such organizing of protected expressive activity cannot form the foundation of a civil conspiracy. The Supreme Court has been unequivocal: "mere association" with a group that engages in unlawful conduct does not establish liability for those acts. *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 919 (1982). Liability "must be based on the defendant's own conduct." *Id*. at 920. Where a speaker's role is limited to "strongly and passionately advocat[ing]" for a cause, even one that later involves tortious acts by others, that speaker cannot be held liable for

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

those tortious acts absent proof that the speaker directed those specific acts. *Id*. That some unnamed protesters may have acted improperly does not make Brunner liable for those acts without specific factual allegations that he knew of and directed them.

### 2. Plaintiffs' Facilitation Theory Fails

The FAC's facilitation theory against Brunner rests on two bases, neither of which states a claim.  First, FAC ¶¶276–279 alleges that he "planned, organized, and coordinated the disruption" and "acted to facilitate the intentional trespass." These are conclusory "on information and belief" allegations that do not specify what Brunner did to facilitate the trespass beyond the general assertion that he organized the protest. Organizing a protest that includes trespassers is not the same as facilitating the trespass. *Clairborne Hardware*, 458 U.S. at 920.

Second, FAC ¶ 265 alleges that Brunner "registered under his own name, for the purpose of allowing another disruptor to gain entry under false pretenses." But the FAC does not allege how his registration enabled any particular disruptor's entry, which Doe defendant benefited, or that the registration was actually used for that purpose. The FAC itself concedes that "Defendant Brunner likewise registered for the event under his own name but did not trespass himself.  He did so to facilitate the trespass of another Defendant." (FAC ¶ 277). This allegation is too speculative and attenuated to plausibly allege facilitation of trespass per *Twombly*.

- 28 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Liability attaches to a protest organizer for the unlawful acts of participants only where the organizer "specifically authorized" or "directed" those acts. *Laughon v. Int'l Alliance of Theatrical Stage Empls.*, 248 F.3d 931, 935 (9th Cir. 2001). The FAC alleges a political protest, not a planned trespass invasion with Brunner as its architect. As such, the conspiracy and facilitation claims against Brunner should be dismissed.

**F. Plaintiff Mastron Lacks Standing to Assert Claims Arising From the March 19 and April 20 Events.**

Article III of the Constitution limits federal jurisdiction to actual "Cases" and "Controversies," and requires that each plaintiff establish standing to bring each claim she asserts. *Lujan v. Defenders of Wildlife*, 504 U.S. 560  Standing requires that the plaintiff suffered a concrete and particularized injury in fact that is fairly traceable to the defendant's challenged conduct. *Id.* at 560–61. Where a plaintiff asserts claims arising from multiple distinct events, she must independently establish standing as to each. *Davis v. United States*, 343 F.3d 1282, 1286 (10th Cir. 2003).

The FAC does not allege that Mastron was at either the March 19 or the April 20 event. Her involvement begins and ends with the September 7 event. (FAC ¶¶ 5, 35). The harms alleged on her behalf all flow from September 7. *Id.* ¶ 182.

Because Mastron suffered no injury on March 19 or April 20 events, she cannot satisfy *Lujan*'s first and most basic requirement: injury in fact that is "concrete

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

and particularized" and "actual or imminent, not conjectural or hypothetical." 504 U.S. at 560 (internal quotation marks omitted). The abstract knowledge that purportedly religious gatherings she did not attend were disrupted does not constitute the kind of direct, personal injury Article III demands. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (a "bare procedural violation" or generalized grievance divorced from concrete harm is insufficient). Accordingly, to the extent Plaintiffs' First Claim for Relief seeks relief on Mastron's behalf for the March 19 and April 20 events, those claims should be dismissed for lack of standing. Fed. R. Civ. P. 12(b)(1).

**CONCLUSION**

For the foregoing reasons, Named Defendants respectfully request that the Court dismiss the FACE Act cause of action with prejudice.

DATED: April 7, 2026                    RESPECTFULLY SUBMITTED,

                                        LAW OFFICES OF THOMAS B. HARVEY

                                BY:     _____

                                        Thomas B. Harvey

                                        LAW OFFICES OF BEN GHARAGOZLI

                                BY:     */s/ Benham Gharagozli*

                                        Ben Gharagozli

                                        Attorneys for Named Defendants

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## RULE 5 CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies the Rule 5 meet and confer requirement has been satisfied.  Specifically, the undersigned counsel met and conferred with Plaintiffs' counsel via videoconference on March 27, 2026.


DATED: April 7, 2026                    LAW OFFICES OF THOMAS B. HARVEY

                                  BY:  _____

                                        Thomas B. Harvey

- 31 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# **CERTIFICATE OF SERVICE**

All Case Participants are registered for the USDC CM/ECF System

I hereby certify that on April 7 2026, I electronically filed the foregoing with the clerk of the Court for the United States District Court, Southern District of California by using the CM/ECF System.

Participants in the case will be served by the CM/ECF System

Dated: April 7, 2026          By:    _Thomas B. Harvey_

                                              Thomas B. Harvey

- 32 -

DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT