Thomas B. Harvey (SBN 287198)
**Law Offices of Thomas B. Harvey**
365 E. Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805)768-4440
Email: tbhlegal@proton.me

Ben Gharagozli (SBN 272302)
**Law Offices of Ben Gharagozli**
7655 Winnetka Avenue, #2010
Winnetka, CA 91306
Telephone: (310) 272-9211
Facsimile: (855) 628-5517
Email: ben@lobglaw.com

Mark Kleiman (SBN 115919)
**Kleiman/Rajaram**
12121 Wilshire Blvd., Suite 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Email: mark@krlaw.us

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christian and Jewish Alliance Inc., a California not-for-profit corporation, Ezra Ministries, a California not-for-profit religious corporation, d/b/a The Mission Church, and Ruth Mastron,<br><br>*Plaintiffs,*<br><br>v.<br><br>Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, Maya Karalius, and Does 1-40,<br><br>*Defendants.* | Case No. 3:25-cv-02992-W-AHG<br><br>Judge: Hon. Andrew G. Schopler<br><br>**NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS IN SUPPORT THEREOF**<br><br>Date:       June 1, 2026<br>Time:       10:00 am<br>Location: Edward J. Schartz<br>                United States Courthouse<br>                221 West Broadway<br>                San Diego, CA 92101 |

- 1 -
NOTICE OF SPECIAL MOTION TO STRIKE

## NOTICE OF SPECIAL MOTION TO STRIKE

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 1, 2026 at 10:00 am in the above entitled court located at Edward J. Schwartz United States Courthouse at 221 West Broadway, San Diego, CA 92101, Defendants, Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, and Maya Karalius will and hereby does move to strike the First Amended Complaint filed by Plaintiffs Christian and Jewish Alliance Inc., Ezra Ministries, a California not-for-profit religious corporation, d/b/a The Mission Church, and Ruth Mastron on March 23, 2026.

This Motion will be based upon this motion, Section 425.16 of the Code of Civil Procedure (hereinafter "CCP"), the accompanying memorandum of points and authorities, the court's file, the declarations of Daniel Brunner, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Thomas Harvey, Ben Gharagozli, and any and all further evidence or argument that may be presented at or before the hearing on this Motion.

//

//

//

//

DATED: April 7, 2026

RESPECTFULLY SUBMITTED,

LAW OFFICES OF THOMAS B. HARVEY

BY: /s/Thomas B. Harvey

Thomas B. Harvey

LAW OFFICES OF BEN GHARAGOZLI

BY: *Ben Gharagozli*

Ben Gharagozli

Attorneys for Defendants

NOTICE OF SPECIAL MOTION TO STRIKE

# TABLE OF CONTENTS

I.  **INTRODUCTION** ....................................................................................1

II. **FACTUAL BACKGROUND: THE MISSION CHURCH DEMANDS TO USE RELIGION AS A SHIELD AND A SWORD** ..............................................2

   A.  THE CHURCH VIOLATED IRS RULES GOVERNING 501(C)(3) ORGANIZATIONS BY DONATING TO POLITICAL CANDIDATES AND URGING CONGREGANTS TO DO THE SAME...........................2

   B.  THE CHURCH SERVED AS AN ORGANIZING HUB TO PROMOTE CONSERVATIVE POLITICAL CAUSES SUCH AS OPPOSITION TO LGBTQ AND DEI POLICIES IN LOCAL SCHOOLS. ........................................................................4

   C.  MISSION CHURCH'S PATTERN OF POLITICAL ACTIVITY CONTEXTUALIZES THE MARCH 19, 2025 EVENT..........................6

   D.  DEFENDANTS EXPRESSED POLITICAL RESPONSE TO A POLITICAL FORUM. .............................................................8

   E.  PLAINTIFFS' LAWSUIT AND THE CLAIMS AT ISSUE. ...........10

III. **ARGUMENT**.........................................................................................10

   A.  DEFENDANTS ENGAGED IN PROTECTED ACTIVITY. ..........15

      1.  The Event Was a Political Forum, Not a Worship Service..........15

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

2.   The Mission Church's Pattern of Political Activity Confirms the Political Character of the March 19th Event.......................................19

    a.   *The Church Made Illegal Campaign Donations and Directed Congregants to Support Specific Candidates Based on Their Stances on Political Issues*. .....................................................19

    b.   *The Church Served as a Political Organizing Hub on LGBTQ and DEI Policy*. .............................................................20

    c.   *The Pattern Establishes That Defendants Were Responding to Political, Not Religious, Activity*. .............................................20

**B.   PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE TRESPASS CLAIM**........................................................21

1.   Plaintiffs' Trespass Theory Rests on the Premise That Entry for Expressive Purposes Is Unlawful — But That Premise Cannot Survive First Amendment Scrutiny.................................................22

2.   Plaintiffs' Theory that Defendant Brunner Aided and Abetted Fails for the Same Reasons.............................................................24

**IV.   CONCLUSION** ........................................................24

**RULE 5 CERTIFICATE OF COMPLIANCE**....................................................26

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

## CASES

*Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 740-742 (D.C. 2021).......................14

*Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1010-11 (Cal. 2021) ...................13

*Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 674 (Cal. 1993) ..................22

*City of L.A. v. Animal Def. League*, 135 Cal. App. 4th 606, 621 (Cal. 2006).........13

*City of Montebello v. Vasquez*, 1 Cal. 5th 409, 421 (2016)....................................12

*Civic Western Corp. v. Zila Industries, Inc.*,

66 Cal.App.3d 1, 16-17 (Cal. 1977) ........................................................................23

*Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 934 (C.D. Cal. 2022)

 ...........................................................................................................................12, 14

*Doe v. Gangland Prods.*, 730 F.3d 946, 954 (9th Cir. 2013)..................................13

*Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (Cal. 2002)..............11

*Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) ..........................................2

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*,

742 F.3d 414, 422 (9th Cir. 2014).............................................................................13

*Gunn v. Drage*, 65 F.4th 1109, 1118 (9th Cir. 2023)..............................................14

*Hilton v. Hallmark Cards*, 599 F.3d 894, 905–07 (9th Cir. 2010)..........................12

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1244 (Cal. 2005) ..................................................................11

*Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal.App.4th 1264, 1271 (Cal. 2009)....15

*In re Bah*, 321 B.R. 41 (9th Cir. 2005)....................................................................12

*Khai v. Cty. of L.A.*, 730 F. App'x 408, 411 (9th Cir. 2018)...................................14

*Langer v. Kiser*, 56 F.4th 1085, 1104-1106 (9th Cir. 2023) ............................10, 22

*Manufactured Home Communities, Inc. v. County of San Diego,*
655 F.3d 1171 (9th Cir. 2011) .................................................................................12

*Martin Baker Aircraft Co. v. Teledyne Risi, Inc.*,
2020 U.S. Dist. LEXIS 186262 (2020) ...................................................................14

*Med. Marijuana, Inc. v. ProjectCBD.com,*
46 Cal. App. 5th 869, 889 (Cal. 2020) ...................................................................14

*Mogan v. Sacks, Ricketts & Case, LLP,*
2022 U.S. Dist. LEXIS 4592 (N.D. Cal. Jan. 10, 2022).........................................13

*Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (Cal. 2002) .........................................14

*Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 590 (Cal. 2017) ..............13

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
890 F.3d 828, 834 (9th Cir. 2018).......................................................14 (at fn.13)

*Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Ass'n*,

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

136 Cal. App. 4th 464, 476 (Cal. 2006) ........................................................14

*Robins v. Pruneyard*, 23 Cal.3d 899, 907 (Cal. 1979) ...................................23

*Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016)................................ 12, fn.12

*Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) ....................................1

*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (Cal. 2010)...........................14

*Thomas v. Quintero*, 126 Cal.App.4th 635, 658 (Cal. 2005) ..............................5, 15

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,

190 F.3d 963, 970-73 (9th Cir. 1999)................................................12, 15

*United States v. Grace*, 461 U.S. 171 (1983) ............................................10

*Wilcox v. Superior Court*, 27 Cal.App.4th 809 (Cal. 1994) .................................10

## STATUTES AND CODES

*Federal Statutes*

18 U.S.C. § 248 (Freedom of Access to Clinic Entrances Act) .............................10

*California Statutes*

Cal. Code Civ. Proc. § 425.16................................................................passim

Cal. Code Civ. Proc. § 425.16(a) ........................................................11, 12

Cal. Code Civ. Proc. § 425.16(b)(1).........................................................11, 12, 13

Cal. Code Civ. Proc. § 425.16(c)(1)........................................................14

Cal. Code Civ. Proc. § 425.16(e) ...........................................5, 13, 15, 16, 18, 21

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

Cal. Code Civ. Proc. § 425.16(e)(3)....................................................................18

Cal. Code Civ. Proc. § 425.16(e)(4)....................................................................18

Cal. Pen. Code § 602.8(c).....................................................................................23


**FEDERAL RULES**

Fed. R. Civ. P. 12(g)(2) ........................................................................................15

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs should not be permitted to misuse religion to suppress political speech. In this case, the defendants protested a political speech by a self-proclaimed atheist and former member of the Israeli Knesset on the subject of Israeli statehood and Palestinian refugee rights. The cosmetic amendments that Plaintiffs made in the First Amended Complaint ("FAC") do not change the equation.  Rather, the amendments confirm that Plaintiffs are hoping to merge politics and religion in a manner that silences those who disagree with their political views about Israel.  For example, the new paragraphs 52 through 55 assert that Plaintiffs hold certain opinions about the state of Israel and insist that those opinions are supported by religious doctrine.  However, Plaintiffs political views about Israel, no matter how strongly (and even religiously) Plaintiffs believe in them, does not make them immune from criticism and they should not be interpreted in a manner that infringes upon constitutionally protected speech.[1]

The trespass claim remains a textbook SLAPP suit filed to punish and deter expressive activity on one of the most contested geopolitical questions of our time. Defendants respectfully request that this Court grant this anti-SLAPP motion without leave to amend because any amendment would be futile.  See *Serra v. Lappin*, 600 F.

---

[1] Paragraph 63 of the FAC goes even further and insists that all observant Jewish people support Israel.  This is simply false.  (Declaration of Ben Gharagozli, ¶ 3, Ex. A)

MEMORANDUM OF POINTS AND AUTHORITIES

3d 1191, 1200 (9th Cir. 2010); *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009).

## II. FACTUAL BACKGROUND: THE MISSION CHURCH DEMANDS TO USE RELIGION AS A SHIELD AND A SWORD.

Plaintiffs seek the protections of a religious institution while simultaneously operating as a political organizing hub. The public record shows that The Mission Church and its lead pastor, David Menard, have repeatedly and explicitly used the church's platform, facilities, and financial resources for political purposes. This pattern is directly relevant to the character of the March 19th event and whether the church's invocation of religion reflects a sincere claim or an unconstitutional strategy to suppress protected political dissent.

### A. THE CHURCH VIOLATED IRS RULES GOVERNING 501(C)(3) ORGANIZATIONS BY DONATING TO POLITICAL CANDIDATES AND URGING CONGREGANTS TO DO THE SAME.

In October 2024, Mission Church, which operates as a 501(c)(3) nonprofit under the legal name Ezra Ministries, donated $950 each to two Carlsbad Unified School Board candidates, Jen Belnap and Laura Siaosi, for a total of $1,900 in direct campaign contributions in violation of Internal Revenue Code.[2]

---

[2] Kristen Taketa, *Flouting IRS Rules, Carlsbad Church Gave $1,900 to School Board Candidates and Urged Worshipers to as Well,* San Diego Union-Trib. (Nov. 2, 2024) https://www.sandiegouniontribune.com/2024/11/02/flouting-irs-rules-carlsbad-church-gave-1900-to-school-board-candidates-and-urged-worshipers-to-as-well/. The IRS prohibits all 501(c)(3) organizations from "directly or indirectly participating in, or intervening in, any political campaign on behalf of (or in opposition to) any candidate for elective public office. Contributions to political campaign funds or

During an October 13, 2024 sermon, Pastor Menard told his congregation: "I would like to ask you to support them, both with your votes and financially."[3] He also informed congregants that the church itself was financially supporting the candidates and described the political strategy explicitly: the church already had the support of one sitting board member, and electing the two candidates would create a majority aligned with the church's political positions, which would influence the hiring of a new superintendent.[4]  This would in turn promote the church's political aspirations (e.g. anti-LGBTQ rights).  Pastor Menard described the opposing political coalition as "the opposition, the LGBTQ community," framing the school board election as a contest between his church's values and an opposing political faction.[5]

The church subsequently acknowledged these donations violated IRS guidelines and requested the money be returned.  In effect, the church admitted to crossing the line between religious activity and prohibited political campaigning. A 501(c)(3) organization that makes direct campaign contributions, urges congregants from the pulpit to vote for specific candidates, and describes its strategy for gaining political control of an elected body is not functioning solely as a place of worship. It

---

public statements of position (verbal or written) made on behalf of the organization in favor of or in opposition to any candidate for public office clearly violate the prohibition against political campaign activity.  Violating this prohibition may result in denial or revocation of tax-exempt status and the imposition of certain excise taxes." https://www.irs.gov/charities-non-profits/charitable-organizations/restriction-of-political-campaign-intervention-by-section-501c3-tax-exempt-organizations
[3] *Id.*
[4] *Id.*
[5] *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES

is functioning as a political organization, one that has chosen to use its tax-exempt religious status as both shield and sword.

## B. THE CHURCH SERVED AS AN ORGANIZING HUB TO PROMOTE CONSERVATIVE POLITICAL CAUSES SUCH AS OPPOSITION TO LGBTQ AND DEI POLICIES IN LOCAL SCHOOLS.

The 2024 school board race was not an isolated instance but rather part of an ongoing pattern of the Mission Church's political activity. In 2023, the church became a central organizing venue for community opposition to Carlsbad Unified School District's Diversity, Equity, Inclusion, and Belonging (DEIB) plan.[6] The Mission Church was explicitly promoting conservative political causes.

A Carlsbad High School vice principal appeared at Mission Church to urge attendees to attend district meetings to oppose the DEI plan. Pastor Menard hosted Assistant Vice Principal Ethan Williams to instruct his congregation that LGBTQ issues should not be taught in schools.[7] Pastor Menard mobilized people to attend and influence school board meetings to the curriculum and told them LGBTQ issues harm

---

[6] ABC 10 News San Diego, *Controversy over Carlsbad School District Administrators comments on proposed DEI plan* (May 23, 2023) https://www.10news.com/news/local-news/north-county-news/controversy-over-carlsbad-school-district-administrators-comments-on-proposed-dei-plan
[7] Priya Sridhar, *Carlsbad High VP Protests School's Proposed Gender Identity Curriculum in Presentation to Church Members.* NBC 7 San Diego (May 23, 2023) https://www.nbcsandiego.com/news/local/carlsbad-high-vp-protests-schools-proposed-gender-identity-curriculum-in-presentation-to-church-members/3232445/

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES

indoctrinate students.[8] Students at Carlsbad High School staged a walkout in response to what they described as anti-LGBTQ rhetoric connected to the speech delivered at Mission Church.[9]  The slides of Mr. Williams' presentation confirm that he was discussing political issues and not religious ones (see e.g. the discussion regarding the pending legislation on page 17 of the slides).  (Declaration of Thomas B. Harvey, ¶ 3, Ex. B).  The cited news article in footnote 7 confirms that opposition to the DEI and LGBTQ curriculum was largely due to Pastor Menard and the Mission Church.

What is more, although the FAC attempts to portray Liat Cohen-Reeis as solely a religious leader (see e.g. FAC, ¶ 26), that is not accurate.  Ms. Cohen-Reeis is a director of StandWithUs, an organization that has received money directly from the State of Israel.  (Declaration of Ben Gharagozli, ¶ 5, Ex. D).

These are not purely religious activities. They are the activities of a political organization using a religious venue to recruit, organize, and mobilize constituents around contested public issues.  CCP § 425.16(e).  Plaintiffs would be hard pressed to suggest that LGBTQ rights are not "something of concern to a substantial number of people."  *Thomas v. Quintero*, 126 Cal.App.4th 635, 658 (Cal. 2005)

//

//

---

[8] Kristen Taketa, *A Carlsbad church has been mobilizing opposition against the school district's diversity plan*, San Diego Union-Trib. (June 23, 2023) https://www.sandiegouniontribune.com/2023/06/23/a-carlsbad-church-has-been-mobilizing-opposition-against-the-school-districts-diversity-plan/
[9] Steve Puterski, *Carlsbad students walkout, claim district lacks LGBTQ support*. The Coast News Group (May 31, 2023) https://thecoastnews.com/carlsbad-students-protest-school-boards-pride-flag-decision/

MEMORANDUM OF POINTS AND AUTHORITIES

## C. MISSION CHURCH'S PATTERN OF POLITICAL ACTIVITY CONTEXTUALIZES THE MARCH 19, 2025 EVENT.

On March 19, 2025, the Mission Church hosted an event headlined by Dr. Einat Wilf. (FAC ¶ 75-76) Plaintiffs themselves describe Dr. Wilf as 'a former member of the Israeli Knesset, a renowned scholar, and an expert on the current conflict in the Middle East.' *Id*. Dr. Wilf was not invited to deliver a sermon or lead a religious service.[10] Her talk was titled: "Exploring Israel's Statehood and the Palestinian Refugee Issue." It addressed contested questions of international law, geopolitics, and the rights of a displaced population that are actively debated in legislatures, courts, diplomatic forums, and public squares around the world.  There was nothing religious about Dr. Wilf's presence at the Church that day.

The event was free of charge and open to the public, subject to advance registration. (FAC ¶ 78) About 400 people attended, including roughly 200 members of the local Jewish community who were not members of the church. (FAC ¶ 80). The FAC alleges "[t]he event opened with prayer by Pastor Menard."  Dr. Wilf then provided a presentation of "Israel's religious history and current status."[11]  (FAC ¶¶ 82, 86)

---

[10] Nor can Plaintiffs credibly allege otherwise.  Dr. Wilf's Wikipedia page confirms that she is a self described atheist.  (Declaration of Ben Gharagozli, ¶ 4, Ex. C.)

[11] Although the FAC does not state so explicitly, paragraph 86 strongly implies that Dr. Wilf's presentation occurred after Pastor Menard's prayer.  Plaintiffs do not persuasively explain how a former politician who is a self described atheist providing "a discussion of Israel's religious history and current status" is a religious event rather than a political one.

MEMORANDUM OF POINTS AND AUTHORITIES

The opening prayer did not transform the political event into a worship service any more than an invocation before a city council meeting transforms subsequent policy debate into religious exercise. As another example, prayers before US Congressional sessions do not negate the inherently political nature of Congress.

It is worth noting that the original Complaint insisted that "[t]he purpose of the event was religious" (Original Complaint, ¶ 67). However, that assertion does not appear in the FAC. provides. The substantive character of the March 19th event was inherently political: a former foreign legislator who is also a self-proclaimed atheist, advanced a specific position on one of the most contested geopolitical conflicts of our time, before a broadly public audience assembled at a church that had just months earlier used its pulpit to direct congregants to support specific political candidates based on those candidates' positions on conservative political issues. In reality, this was a political event that just so happened to start with a prayer. This is supported by the fact that the FAC concedes that Dr. Wilf headlined the event. There is no authority indicating that political events beginning with a prayer are immune from political protest. That has not and cannot be the law in a non-theocratic state. The FAC concedes that the purported disruption began after Dr. Wilf began speaking. (FAC ¶ 98). As such, even if the event was a mix of a religious and political event, it is undisputed that the Defendants' expressions that day were aimed at the political portion of the event (i.e. Dr. Wilf's presentation about Israel). Plaintiffs have not and simply cannot seriously argue that a presentation given by a self-proclaimed atheist,

MEMORANDUM OF POINTS AND AUTHORITIES

former politician and purported "expert on the current conflict in the Middle East" is a religious ceremony.

## D. DEFENDANTS EXPRESSED POLITICAL RESPONSE TO A POLITICAL FORUM.

The Israel-Palestine conflict, including the legal and moral basis for Israeli statehood and the rights of Palestinian refugees, is among the most actively and passionately debated public issues of our era. Defendants are individuals who hold sincere and deeply felt opinions about that conflict (they are pro-Palestine), and who chose to express those views in response to a public lecture by a prominent pro-Israel advocate.

On March 19, 2025, a group of individuals, including some of the named Defendants, protested Dr. Wilf's political lecture.  (FAC ¶ 96); (Declarations of Pagaduan, Turner-Brown, Hartley, Miller, ¶¶ 3-8).   They expressed political viewpoints on the Israel-Palestine conflict. More specifically, the named Defendants who were actually at the event expressed pro-Palestinian political viewpoints that were in direct opposition to the anti-Palestinian viewpoints that Dr. Wilf's lecture was promoting. However strongly the Plaintiffs disagree with such pro-Palestinian political viewpoints, those pro-Palestinian political viewpoints are shared by millions of people in the United States and around the world and lie at the very heart of contemporary political discourse.

MEMORANDUM OF POINTS AND AUTHORITIES

A smaller number of individuals entered the sanctuary and, at intervals during Dr. Wilf's remarks, stood and voiced their opposition before being escorted from the premises.  (FAC. ¶ 85) This expressive activity at a protest at a political forum is the kind of dissent that has a long and recognized history in American public life, from town halls to legislative galleries to lectures on matters of contested public policy. Although Plaintiffs insist that "The Church is not designed to be a public forum" (FAC, ¶ 21) and "The Church sanctuary does not have features of a traditional public forum" (FAC, ¶ 22), this does not help Plaintiffs' goal of depriving Defendants of constitutionally protected expression (even if it does disagree with Plaintiffs' strongly held political beliefs about Israel).  What is more, Plaintiffs' furnished facts betray their characterization.  Not only did Plaintiffs choose to turn the Church into a political forum by hosting a political event (that just so happened to be aligned with their views about Israel), Plaintiff's description of the Church sanctuary in paragraph 22 leaves the reader guessing as to how the Church "does not have features of a traditional public forum".  Specifically, it is entirely unclear how chairs facing a stage in rows with elevating seating to permit those in the back to be able to see the stage disqualifies the venue as one that is not a "traditional public forum" as Plaintiffs insist.

Plaintiffs also allege that following the conclusion of the event, a group of protesters gathered on the public sidewalk adjacent to the church's front entrance. (FAC ¶ 119) That sidewalk is five feet and eleven inches wide.  (FAC ¶ 89) And,

- 9 -
MEMORANDUM OF POINTS AND AUTHORITIES

even according to the FAC itself, this small sidewalk is a public thoroughfare directly abutting both the church entrance and a main roadway. (FAC. ¶¶ 88-90) The use of public sidewalks for expressive activity is among the most firmly established rights under the First Amendment. See e.g. *United States v. Grace*, 461 U.S 171 (US. 1983) (public sidewalks are public forums and must be treated as such for First Amendment purposes)

### E. PLAINTIFFS' LAWSUIT AND THE CLAIMS AT ISSUE.

Plaintiffs filed the present action on November 4, 2025, asserting two claims: (1) violations of the Freedom of Access to Clinic Entrances Act ('FACE Act'), 18 U.S.C. § 248, and (2) trespass per California law.  (FAC at p. 1) This motion addresses only the trespass claim, the sole state law cause of action in this case and properly subject to California's anti-SLAPP statute, CCP § 425.16, as applied in federal court to state law claims.  A defendant may invoke anti-SLAPP protections against a trespass claim. *Langer v. Kiser*, 56 F.4th 1085, 1104-1106 (9th Cir. 2023)

Plaintiffs assert the trespass claim against Defendants Turner-Brown, Miller, Hartley, Pagaduan, and Does 17-20 as alleged trespassers.  (FAC ¶¶ 257-280)

### III.    ARGUMENT

SLAPP suits aim to prevent "citizens from exercising their political rights or punishing those who have done so." *Wilcox v. Superior Court*, 27 Cal.App.4th 809 (Cal. 1994), [citing Canan & Pring, Strategic Lawsuits Against Public Participation

MEMORANDUM OF POINTS AND AUTHORITIES

(1988) 35 Social Problems 506.] [disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (Cal. 2002)]

California's anti-SLAPP law requires a Court to strike a petition that chills free speech unless there is a probability that the plaintiff will prevail on the claim.  CCP § 425.16. Specifically, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." CCP § 425.16(b)(1).

The statute is clear that it "shall be construed broadly."  CCP § 425.16(a).  "In deciding an anti-SLAPP motion, the trial court must engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1244 (Cal. 2005).  The moving party need not establish that the action was *intended* to chill the exercise of constitutional speech. *Equilon Enterprises*, 29 Cal.4th at 57.

California's anti-SLAPP statute provides for a "special motion to strike" any "cause of action against a person arising from any act of that person in furtherance of

MEMORANDUM OF POINTS AND AUTHORITIES

the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." CCP. § 425.16(b)(1). The law is designed to "discourage suits that masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (cleaned up). As the Legislature decreed, the statute must "be construed broadly" to protect public participation from being chilled by lawsuits. C.C.P. § 425.16(a); *Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171 (9th Cir. 2011); *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 421 (2016) ("[T]he anti-SLAPP statute is to be 'construed broadly' so as to 'encourage continued§ participation in matters of public significance . . . .'").

An anti-SLAPP motion may be made in Federal Court to eliminate a plaintiff's state law claims. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963, 970-73 (9th Cir. 1999).[12] In the Ninth Circuit, the anti-SLAPP statute applies in pendent jurisdiction cases. E.g. *Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 934 (C.D. Cal. 2022); *In re Bah*, 321 B.R. 41 (9th Cir. 2005). Courts in the Ninth Circuit must apply the substantive aspects of the anti-SLAPP statute as the California Supreme Court and appellate courts have applied them. *Hilton v. Hallmark Cards*, 599 F.3d 894, 905–07 (9th Cir. 2010).

---

[12] Some procedures are, however, different in federal court. For example, defendants may file anti-SLAPP motions more than 60 days after being served. *Sarver,* 813 F. 3d at 900.

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES

The anti-SLAPP analysis proceeds in two steps. Under C.C.P. § 425.16(b)(1), a defendant has the initial burden of showing that the challenged causes of action arise from acts in furtherance of their right of petition or free speech in connection with a public issue, as defined in C.C.P. § 425.16(e). The defendant's burden on the first prong is "not an onerous one." *Mogan v. Sacks, Ricketts & Case, LLP*, 2022 U.S. Dist. LEXIS 4592, at \*29 (N.D. Cal. Jan. 10, 2022); *Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 590 (Cal. 2017) [(disapproved of on other grounds in *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1010-11 (Cal. 2021)]. The defendant "need only make a prima facie showing that the plaintiff's claims arise from the defendant's constitutionally protected free speech or petition rights," and does not need to "establish his or her actions are constitutionally protected under the First Amendment as a matter of law." *Okorie*, 14 Cal. App. 5th at 590 (cleaned up); see also *Doe v. Gangland Prods.*, 730 F.3d 946, 954 (9th Cir. 2013). The "court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary." *Greater L.A. Ag. on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) [quoting *City of L.A. v. Animal Def. League*, 135 Cal. App. 4th 606, 621 (Cal. 2006)].

Once a defendant has made their showing, the burden shifts to the plaintiff to establish "that there is a probability that the plaintiff will prevail on the claim." C.C.P. § 425.16(b)(1). This prong is satisfied if the plaintiffs have not shown the

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES

complaint to be legally sufficient in every material respect, including those not affirmatively challenged by defendants in an anti-SLAPP motion.[13] *Gunn v. Drage*, 65 F.4th 1109, 1118 (9th Cir. 2023); *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (Cal. 2002); *Dean*, 562 F. Supp. 3d at 933; see also *Am. Studies Ass'n v. Bronner*, 259 A.3d 728, 740-742 (D.C. 2021) (holding claims targeting an academic Israel boycott resolution necessarily met the second prong of an analogous District of Columbia anti-SLAPP law because trial court had dismissed them for failure to state a claim). The operative complaint "provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion," *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 889 (Cal. 2020), and the court "must take the complaint as it is." *Martin Baker Aircraft Co. v. Teledyne Risi, Inc*, 2020 U.S. Dist. LEXIS 186262, at *23 [(quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (Cal. 2006)].

If plaintiffs fail to carry their burden, the motion to strike must be granted and the challenged cause(s) of action "shall be stricken." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 21 (Cal. 2010). A party prevailing on an anti-SLAPP motion is entitled to attorney's fees and costs. C.C.P. § 425.16(c)(1); *Khai v. Cty. of L.A.*, 730 F. App'x 408, 411 (9th Cir. 2018).

---

[13] This is the appropriate standard to apply to this Motion because it challenges only the legal sufficiency of the Complaint. *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

- 14 -

Here, Plaintiffs' lawsuit arises from protected activity and has no probability of prevailing.

Although Fed. R. Civ. P. 12(g)(2) requires defendants to consolidate all available Rule 12 defenses and objections into a single motion, the anti-SLAPP Special Motion to Strike is not a Rule 12 defense, and is to be analyzed not pursuant to the substantive laws surrounding Rule 12 defenses, but pursuant to the substantive law of California's anti-SLAPP statute, CCP § 425.16.  *See United States ex rel Newsham v. Lockheed Missiles and Space Co*, 190 F.3d 963, 973 (9th Cir. 1999)

## A. **DEFENDANTS ENGAGED IN PROTECTED ACTIVITY.**

The first step is to determine whether the acts that plaintiff challenges "were taken in furtherance of his or her constitutional rights of petition or free speech in connection with a public issue." *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal.App.4th 1264, 1271 (Cal. 2009). More technically, the anti-SLAPP statute specifically protects four categories of activity that constitute "acts in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" CCP. § 425.16(e).  It is well settled that "a matter of public interest should be something of concern to a substantial number of people." *Quintero*, 126 Cal.App.4th at 658.

1. The Event Was a Political Forum, Not a Worship Service.

Plaintiffs' repeated characterizations of an event (that hosted an atheist former politician speaking about political issues) as a worship service does not make it a

- 15 -
MEMORANDUM OF POINTS AND AUTHORITIES

worship service.   Defendants constitute a small, informal local organizing group demanding social justice for a disadvantaged class – the Palestinian people. Since Defendants were protesting together as part of this informal group engaging in expressive conduct about issues of major public and political importance, California's anti-SLAPP statute applies

The anti-SLAPP statute specifically protects four categories of activity that constitute "acts in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue"  CCP. § 425.16(e).  Those four categories are: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Here, Defendants protested in favor of Palestinian rights at an event where a political figure and former member of Israel's congressional body was advocating against those rights.  As such, subdivisions (e)(3) and (e)(4) of the anti-SLAPP apply.

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' characterization of the March 19th event as a 'worship service' is Plaintiffs' framing, not the event's reality. The actual facts of the FAC tell a different story. The event was headlined by Dr. Einat Wilf, whom Plaintiffs describe as 'a former member of the Israeli Knesset, a renowned scholar, and an expert on the current conflict in the Middle East.' (FAC ¶ 76) Dr. Wilf appeared not to deliver a sermon or lead prayer, but to provide what the FAC calls 'a discussion of Israel's religious history and current geopolitical status.' (FAC ¶ 86) The fact that Dr. Wilf is a self-proclaimed atheist effectively defeats any argument that Dr. Wilf was a central part of a "worship service".

The purported disruption began after Dr. Wilf began speaking. (FAC ¶ 98). As such, it is undisputed that the Defendants' expressions were aimed at the political portion of the event (i.e. Dr. Wilf's presentation about Israel). Plaintiffs have not and simply cannot seriously argue that a presentation given by a self-proclaimed atheist, former politician and purported "expert on the current conflict in the Middle East" is a religious ceremony. Instead, Plaintiffs seem to be demanding that the Court create an exception to protected activity doctrine in anti-SLAPP jurisprudence as well as freedom of expression as enshrined in the First Amendment and the California Constitution. Specifically, Plaintiffs seem to advocate that if a political event begins with a prayer and/or if a political viewpoint can be justified with religious doctrine, it is immune from political criticism. Although such a position may be justified in a religious theocracy, it is indefensible in the United States.

MEMORANDUM OF POINTS AND AUTHORITIES

The event's own title removes any ambiguity: "Exploring Israel's Statehood and the Palestinian Refugee Issue." This was a lecture on contested questions of international law, geopolitics, and the rights of a displaced population (i.e., the Palestinian people), questions that are actively debated in legislatures, courts, universities, and the streets of cities around the world. It is not a worship service. It is a political presentation by a political figure who is a self-proclaimed atheist.

The presence of an opening prayer and hymns does not transform a political lecture into protected religious worship for purposes of California trespass law. What matters is the substantive character of the event. Here, the substantive character was unmistakably political: a former foreign legislator, advancing a specific political position on one of the most contested geopolitical conflicts of our time, before a broadly public audience assembled at a church that had, just months earlier, used its pulpit to direct congregants to support specific political candidates and donate to their campaigns.

Defendants entered the church to protest that political speech. Their expressive conduct was a direct response to political speech on a matter of unquestionable public concern. The Israel-Palestine conflict, U.S. foreign policy toward Israel, the legal basis for Israeli statehood, and the rights of Palestinian refugees are among the most actively debated public issues of our era. Protest activity directed at a political forum on those subjects is protected expressive conduct under both the First Amendment and CCP § 425.16(e)(3) and (e)(4).

MEMORANDUM OF POINTS AND AUTHORITIES

2. <u>The Mission Church's Pattern of Political Activity Confirms the Political Character of the March 19th Event.</u>

The March 19th event did not occur in a vacuum. It occurred at an institution with a well-documented pattern of using its platform, facilities, and financial resources for explicitly political purposes. That pattern is directly relevant to the character of the event and to whether Defendants' response to it constitutes protected political expression.

> *a. The Church Made Illegal Campaign Donations and Directed Congregants to Support Specific Candidates Based on Their Stances on Political Issues.*

In October 2024, less than six months before the March 19 event, the Mission Church, operating as the 501(c)(3) nonprofit Ezra Ministries, made direct campaign contributions of $950 each to two Carlsbad Unified School Board candidates, for a total of $1,900 in direct campaign contributions. During an October 13, 2024 sermon, Pastor Menard told his congregation: 'I would like to ask you to support them, both with your votes and financially.' He described the church's explicit political strategy for gaining board majority control and influencing the hiring of a new superintendent. He described the opposing political coalition as 'the opposition, the LGBTQ community.'

The church subsequently acknowledged these donations violated IRS guidelines governing 501(c)(3) organizations and requested the money be returned.

MEMORANDUM OF POINTS AND AUTHORITIES

That acknowledgment is an admission that the church had crossed from religious activity into prohibited political campaigning. A church that makes direct campaign contributions, directs congregants from the pulpit to vote for and financially support specific candidates, and articulates a strategy for gaining political control of an elected body is functioning as a political organization---one that has chosen to use its tax-exempt religious status as cover for partisan activity.

> b. *The Church Served as a Political Organizing Hub on LGBTQ and DEI Policy.*

The church's political activity extends beyond the 2024 school board race. In 2023, The Mission Church became a central organizing venue for community opposition to Carlsbad Unified School District's Diversity, Equity, Inclusion, and Belonging (DEIB) plan (please see *supra* Sections II. A and B). A district vice principal appeared at the church to urge attendees to attend school board meetings opposing the plan. Pastor Menard told congregants that LGBTQ-related topics were inappropriate for schools. The church mobilized non-district residents to attend and influence school board meetings, a political tactic that prompted a student walkout at Carlsbad High School.

> c. *The Pattern Establishes That Defendants Were Responding to Political, Not Religious, Activity.*

Taken together, this pattern establishes that the Mission Church is an institution that regularly uses religious framing to advance its political agenda. When Pastor

- 20 -

MEMORANDUM OF POINTS AND AUTHORITIES

Menard opened the Dr. Wilf event with prayer, he was not transforming a political lecture into a worship service. He was doing what the church has consistently done: deploying religious ritual as the framing for political organizing. Defendants' protest of Dr. Wilf's lecture was a response to that political activity: protected expressive conduct directed at a matter of profound public concern (the rights of the Palestinian people and Israel's deplorable record of violating those rights).

Defendants' conduct falls within the categories of protected activity defined by CCP § 425.16(e). Subsection (e)(3) protects 'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public concern.' Subsection (e)(4) protects 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public concern.'

The Israel-Palestine conflict, Israeli statehood, and Palestinian refugee rights are unquestionably issues of public concern. Dr. Wilf's lecture was an oral statement made at an event open to the public.  The Complaint acknowledges the event was free to attend and required only pre-registration.  (FAC ¶ 78) Defendants' expressive protest of that lecture, including their verbal statements and physical presence at the event, constitutes conduct in furtherance of the right of free speech in connection with a public issue.  Prong One is satisfied.

//

//

MEMORANDUM OF POINTS AND AUTHORITIES

## B. PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE TRESPASS CLAIM

1. Plaintiffs' Trespass Theory Rests on the Premise That Entry for Expressive Purposes Is Unlawful — But That Premise Cannot Survive First Amendment Scrutiny.

Plaintiffs' trespass theory is that Defendants Turner-Brown, Hartley, Miller, Pagaduan, and Does 17-20 exceeded the scope of their consent to enter the church by entering with the intent to protest rather than to attend as audience members. (FAC ¶¶ 261-271) But this theory, applied to a broadly public political forum, would mean that any person who enters a public meeting, town hall, or political event with intent to express disagreement has committed a trespass. That cannot be the law. In fact, it is not the law. *Langer*, 57 F.4th at 1106 ("State-law trespass claims may not be wielded as a weapon to silence accessibility advocates")

"California's definition of trespass is considerably narrower than its definition of nuisance. A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it. A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession. California has adhered firmly to the view that the cause of action for trespass is designed to protect possessory—not necessarily ownership—interest in land from unlawful interference." *Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 674 (Cal. 1993) (internal quotation marks and ellipses omitted).

"Where there is consensual entry, there is no tort, because lack of consent is an element of the wrong." *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal.App.3d 1, 16-17 (Cal. 1977).

Here, the March 19th event was one that was open to the public. The only prerequisite was for guests to pre-register. Guests did not have to even pay a fee. (FAC ¶ 78)

California courts have recognized that consent to enter a place open to the public extends to those with expressive purposes, and that trespass liability cannot be deployed to suppress protected speech. Where entry is for expressive purposes related to the subject matter of a public event, civil trespass liability must be evaluated against constitutional constraints. See *Robins v. Pruneyard*, 23 Cal.3d 899, 907 (Cal. 1979) (California Constitution protects speech and petitioning even in privately owned shopping centers).

Even criminally, individuals engaging in constitutionally protected activities are immune from trespass liability.  Cal. Pen. Code § 602.8(c).

The FAC acknowledges that the event was free and open to the public subject to pre-registration. (FAC ¶ 78) It acknowledges that approximately 400 people attended, including 200 members of the local Jewish community not affiliated with the church. (FAC ¶ 80) A broadly open public event weakens the possessory exclusivity that underlies a trespass claim.

MEMORANDUM OF POINTS AND AUTHORITIES

Moreover, Plaintiffs' own description of the event confirms its political character: a former Knesset member lecturing on Israeli statehood and Palestinian refugee policy. Plaintiffs cannot simultaneously argue that the event was a protected religious worship service under the FACE Act and a sufficiently private gathering to support civil trespass liability under California law.

Plaintiffs' trespass claim against Defendant Brunner is particularly weak because he was not even at the event that day.  (Brunner Declaration, ¶¶ 7-8)  The FAC implicitly admits to this fact as the FAC does not even allege that Brunner was there that day.

### 2. Plaintiffs' Theory that Defendant Brunner Aided and Abetted Fails for the Same Reasons.

The trespass claim against Brunner rests entirely on his alleged planning and coordination of the inside Defendants' entry.  (FAC ¶¶ 276-277) If the underlying trespass claim fails because Defendants' entry was for constitutionally protected expressive purposes, the derivative aiding-and-abetting theory fails with it. One cannot be held liable for aiding and abetting a lawful act. Moreover, Brunner was not there. He was in downtown San Diego at a different protest. (Brunner Declaration, ¶¶ 7-8).  Accordingly, Plaintiffs cannot make the requisite showing on the second prong.

## IV.   CONCLUSION

Plaintiffs' trespass claim arises from Defendants' protected conduct in response to a political speech on a matter of profound public concern- the Israel-Palestine

MEMORANDUM OF POINTS AND AUTHORITIES

rivalry (the event was literally labeled "Israel's Statehood and the Palestinian Refugee Issue"), at a venue that its own leadership has repeatedly used for partisan political organizing in violation of federal tax law. The anti-SLAPP statute exists precisely for this situation. Defendants Turner-Brown, Miller, Hartley, Pagaduan, and Brunner respectfully request that the Court strike the trespass claim in its entirety.

DATED: April 7, 2026

RESPECTFULLY SUBMITTED,

LAW OFFICES OF THOMAS B. HARVEY

BY: /s/Thomas B. Harvey

Thomas B. Harvey

LAW OFFICES OF BEN GHARAGOZLI

BY: Ben Gharagozli

Ben Gharagozli

Attorneys for Defendants

MEMORANDUM OF POINTS AND AUTHORITIES

## <u>RULE 5 CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies the Rule 5 meet and confer requirement has been satisfied.  Specifically, the undersigned counsel met and conferred with Plaintiffs' counsel via videoconference on December 5, 2025, February 2, 2026 and March 27, 2026.


DATED: April 7, 2026                    LAW OFFICES OF THOMAS B. HARVEY

                                BY:  _/s/Thomas B. Harvey_____

                                     Thomas B. Harvey

MEMORANDUM OF POINTS AND AUTHORITIES