Thomas B. Harvey (SBN 287198)
**Law Offices of Thomas B. Harvey**
365 E. Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805)768-4440
Email: tbhlegal@proton.me

Ben Gharagozli (SBN 272302)
**Law Offices of Ben Gharagozli**
7655 Winnetka Avenue, #2010
Winnetka, CA 91306
Telephone: (310) 272-9211
Facsimile: (855) 628-5517
Email: ben@lobglaw.com

Mark Kleiman (SBN 115919)
**Kleiman/Rajaram**
12121 Wilshire Blvd., Suite 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Email: mark@krlaw.us

Attorneys for Named Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Christian and Jewish Alliance Inc., a California not-for-profit corporation, Ezra Ministries, a California not-for-profit religious corporation, d/b/a The Mission Church, and Ruth Mastron,<br><br>*Plaintiffs,*<br><br>v.<br><br>Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, Maya Karalius, and Does 1-40,<br><br>*Defendants.* | Case No. 3:25-cv-02992-W-AHG<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. ANDREW G. SCHOPLER<br><br>Date: June 9, 2026<br><br>Time: 10:00 am<br><br>Location: Edward J. Schwartz United States Courthouse 221 West Broadway San Diego, CA 92101 |

# TABLE OF CONTENTS


**I. INTRODUCTION ........................................................................................1**

**II. STATEMENT OF FACTS ..........................................................................2**

**A. The March 19, 2025 Event…………………………………………………..4**

**B. The September 7, 2025 Event………………………………………………..5**

**C. Defendants' Political Views…………………………………………………5**

**III. LEGAL STANDARD ...................................................................................6**

**IV. ARGUMENT.................................................................................................6**

**A. Plaintiffs Cannot Establish Likelihood of Success on the Merits………..6**

1. **The FACE Act's Religious Worship Provision Has Never Been Applied in the Ninth Circuit and Should Not Be Extended to Prevent Routine Protest Activity……………………………………7**

2. **The March 19 Protest Was Constitutionally Protected ……………9**

3. **The March 19 Egress Claim Is Legally Insufficient………………..12**

a. ***The sidewalk protest did not render egress impassible*…………12**

b. ***The police recognized protest on a public sidewalk adjacent to a place of worship as protected First Amendment activity*………13**

c. ***Turner-Brown's arrest was for impeding a police officer, not for FACE Act obstruction*…………………………………………13**

4. **The September 7 Event Was Not Held at a "Place of Religious Worship"…………………………………………………………...14**

**5. The Intent Element Is Not Established.................................. 14**

**B. Plaintiffs Cannot Establish Irreparable Harm...............................17**

**1. The Chilling Effect Argument Is Speculative and Self-Inflicted.........17**

**2. The Threat of Future Harm Is Too Speculative for Injunctive Relief...................................................................................17**

**C. The Balance of Equities Does Not Favor the Plaintiffs............................21**

**D. The Injunction Is Unconstitutional.........................................................22**

**1. Public Sidewalk Protest Is Entitled to Maximum Protection ...................................................................22**

**2. The 'In Concert With' Language Is Unconstitutionally Overbroad...23**

**3. The Proposed Injunction Constitutes Viewpoint Discrimination.......23**

**V. CONCLUSION....................................................................................... 24**

**RULE 5 CERTIFICATE OF COMPLIANCE.................................................. 26**

**CERTIFICATE OF SERVICE...............................................................26**

# TABLE OF AUTHORITIES

## Cases

*Askins v. United States Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018)…… ………………………………………...23

*Boos v. Barry,* 485 U.S. 312 (1988)……………………………………………….5

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
657 F.3d 936, (9th Cir. 2011)…………………………………... ……………….23

*Grand v. City of Univ. Heights*, 159 F.4th 507 (6th Cir. 2025)……………...……..10

*Helmann v. Codepink Women for Peace*, et al, 2025 WL 3030582
(C.D. Cal. 2025)……………………………………..… ……………………....8

*James v. Rescue* 705 F. Supp. 3d 104, 125 (S.D.N.Y. 2023)………...……………10

*Jingrong v. Chinese Anti-Cult World Alliance Inc.*,
16 F.4th 47 (2d Cir. 2021)………………………………………………………..14

*Junior Sports magazines Inc. v. Bonta*, 80 F.4th 1109 (9th Cir. 2023)……….……24

*Laird v. Tatum*, 408 U.S. 1 (1972)…………...………………………………...17

*Madsen v. Women's Health Center, Inc.,* 512 U.S. 753 (1994) …………….…...6, 22

*NAACP v. Clairborne Hardware Co.*, 458 U.S. 886 (1982)......................................13

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)…………..24

*Snyder v. Phelps*, 562 U.S. 443 (2011)……………………….……………9,12

*Spitzer v. Cain*, 418 F. Supp. 2d 457 (S.D.N.Y. 2006)……………………………..9

*United States v. Grace*, 461 U.S. 171 (1983)………………………………… ……23

*United States v. Gregg*, 32 F. Supp. 2d 151 (D.N.J. 1998)……………………...7, 15

*United States v. Mahoney*, 247 F.3d 279 (D.C. Cir. 2001)…………………………7

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)………..…………………6

**Statutes**

18 U.S.C. § 248 (Freedom of Access to Clinic Entrances Act) ......................... passim

18 U.S.C. § 248(a)(2) ........................................................................................ passim

18 U.S.C. § 248(e)(2) .............................................................................................14

18 U.S.C. § 248(e)(4) ........................................................................................12,14

**Other Authorities**

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993) ........................................9

H.R. Conf. Rep. No. 103-488, 9 (1994) ......................................................................14

## I. INTRODUCTION

Plaintiffs demand that this Court issue a prior restraint injunction barring four political activists from demonstrating about a hot button political issue[1] on a public sidewalk based on two incidents over the course of 6 months. Defendants do not ask this Court to resolve the political dispute at the heart of Plaintiffs' suit. Rather, Defendants simply ask this Court to find that Plaintiffs have failed to satisfy the demanding standard for a preliminary injunction.

Three threshold problems independently defeat Plaintiffs' motion. First, the FACE Act's religious worship provision, 18 U.S.C. § 248(a)(2), has never been sustained on the merits by any court in the Ninth Circuit. Plaintiffs' argument is based on out of Circuit cases applicable to § 248(a)(1) rather than to § 248(a)(2). Plaintiffs hope to suppress political protest activity at what the public record confirms was a political lecture delivered by a self-described atheist, former Israeli Knesset member, Dr. Einat Wilf. (RJN, Exs. A & B) Plaintiffs own evidence as to both events show Defendants intended to oppose a political event and fundraiser.

Part 2 of the proposed injunction bars four protesters from demonstrating on the public sidewalk in front of the Mission Church. This is a prior restraint on speech in a traditional public forum, not narrowly tailored. Its "in concert with" provision would sweep in any one of the four protesters, regardless of whether they have

[1] A recent presentation on CNN indicates that Israel has been losing US support even among Republicans. https://www.youtube.com/watch?v=hBuKWSdq_js&t=284s

violated any law, based on an allegation they knew someone protesting outside the building. Moreover, the proposed injunction applies solely to those who oppose Plaintiffs' political positions, constituting impermissible viewpoint discrimination.

This case involves protesters, American citizens, with deeply held political convictions about an active armed conflict who demonstrated outside and, on one occasion, inside, a venue that decided to use its venue to take an explicit, public, political position on that same conflict. That the venue is a church does not change the equation. Plaintiffs used their church for a political event. Defendants engaged in expressive conduct: they chanted, sang, and raised their voices in protest of the political view that Plaintiffs were promoting. The First Amendment was written precisely to protect such expression, even when it disturbs, offends, or disrupts.

Plaintiffs conflate constitutionally protected political protest with statutory violations, overstate the severity of the conduct, and seek extraordinary injunctive relief, including an exclusion zone from a public sidewalk, that is unsupported by the record, and constitutionally impermissible per Supreme Court precedent. This Court should deny the motion.

## II. STATEMENT OF FACTS

Defendants are private citizens who hold the constitutionally protected and widespread view that the US-supported, Israeli government military campaign in Palestine is genocide. Each has engaged in First Amendment protected advocacy in response to what millions of Americans view as an urgent moral crisis. Plaintiffs

explicitly, publicly and politically support Israel, Defendants support Palestine. Their views are politically opposed.

Plaintiffs ask this Court to silence Defendants' constitutionally protected right to exercise free speech. The Mission Church and the Christian and Jewish Alliance do not merely practice faith in a political vacuum. They are political organizations that politically support a foreign government and publicly advertise events tied to it. The March 19 and September 7 events were political events. They were advertised and specifically convened to express support for the state of Israel, during a time when Israel's policies, and US support for them, have led to mass protests.

International experts conclude that Israel's activities in the Gaza Strip amount to a genocide against the Palestinian people.[2] The International Court of Justice ordered Israel to take all measures to prevent any acts contrary to the 1948 Genocide Convention.[3] In February 2024, Human Rights Watch and Amnesty International indicated that Israel had not complied with the Court's order.[4] On November 21,

---

[2] "Israel committing genocide in Gaza, world's leading experts say", BBC News, 1 September 2025. https://www.bbc.com/news/articles/cde3eyzdr63o

[3] Order of 26 January 2024 of the International Court of Justice. https://www.icj-cij.org/sites/default/files/case-related/192/192-20240126-ord-01-00-en.pdf

[4] Israel Not complying with World Court Order in Genocide Case. Human Rights Watch. February 26, 2024. Human Rights Watch. https://www.hrw.org/news/2024/02/26/israel-not-complying-world-court-order-genocide-case Israel defying ICJ ruling to prevent genocide by failing to allow adequate humanitarian aid to reach Gaza. Amnesty International, 26 February 2024. https://www.amnesty.org/en/latest/news/2024/02/israel-defying-icj-ruling-to-prevent-genocide-by-failing-to-allow-adequate-humanitarian-aid-to-reach-gaza/#:~:text=Israel%20defying%20ICJ%20ruling%20to%20prevent%20genocide,allow%20adequate%20humanitarian%20aid%20to%20reach%20Gaza.

2024, the International Criminal Court issued arrest warrants for Israeli Prime Minister Benjamin Netanyahu and Defense Minister Yoav Gallant for war crimes.[5]

Defendants did not protest because of their religion. They protested because of Plaintiffs' explicit political stance on a specific, contested geopolitical conflict. The First Amended Complaint admits to that fact, as analyzed in further detail in Defendants' motion to dismiss the FACE Act cause of action and anti-SLAPP motion directed towards Plaintiffs' trespass cause of action. Those arguments are incorporated herein as though stated in full.

**A. The March 19, 2025 Event**

On March 19, 2025, the Mission Church hosted an event centered on the political speech of Dr. Wilf, an atheist former member of the Israeli Knesset and a prominent political commentator. The event centered on her political speech. Several individuals entered the event and, at various points during Dr. Wilf's remarks only, stood and shouted in protest. They were escorted out. Additional demonstrators protested outside the Church entrance on a public sidewalk.

Egress was not rendered "impassable" or unreasonably difficult. Plaintiffs' own account acknowledges that attendees left the building. Plaintiffs present no evidence that any attendee was physically prevented from leaving the premises or was injured.

[5] Situation in the State of Palestine: ICC Pre-Trial Chamber I rejects the State of Isreal's challenges to jurisdiction and issues warrants of arrest for Benjamin Netnayahu and Yoav Gallant. Press Release: 21 November 2024. International Criminal Court. https://www.icc-cpi.int/news/situation-state-palestine-icc-pre-trial-chamber-i-rejects-state-israels-challenges

**B. The September 7, 2025 Event**

On September 7 the Alliance hosted a political event at the Legacy International Center, a commercial hotel and conference venue, that regularly rents to non-religious groups. Defendants and others lawfully protested outside the venue. Plaintiffs allege demonstrators slowed vehicle entry to the lot.

Plaintiffs rely heavily on conclusory and inflammatory language not objective description. The record contains no police reports documenting arrests for obstruction at the parking lot, no evidence of vehicular damage attributable to Defendants, and no medical records documenting injury. None of the named Defendants were arrested.

**C. Defendants' Political Views**

Plaintiffs cataloguing Defendants' political views supports Defendants position. Defendants' political views are against Israel's genocide in Palestine. Nothing about Defendants' political viewpoints that are hostile towards religion or suggest that Defendants' motivations were to disrupt religious services. Beyond that, the material is irrelevant. Political beliefs, however disagreeable to those who hold opposing opinions about the topic at hand, are protected by the First Amendment. See e.g. *Boos v. Barry,* 485 U.S. 312, 322 (1988) ("in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment.") Characterizing Defendants' views as evidence of dangerousness, or likelihood of future illegal conduct would unconstitutionally convert protected speech into a predicate for prior restraint.

## III. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party seeking such relief must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Id*. at 20.

Where the requested injunction would restrict speech or expressive conduct in a traditional public forum, it is subject to the most exacting First Amendment scrutiny, and the Court must ensure that any relief is narrowly tailored, burdens no more speech than necessary, and serves a significant government interest that cannot be achieved through less restrictive means. Indeed, the Supreme Court has expressly rejected the "standard time, place, and manner analysis" as "not sufficiently rigorous" in "evaluating a content-neutral injunction." The standard for such an injunction is "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 765 (1994) Plaintiffs fail to meet this burden.

## IV. ARGUMENT

### A. Plaintiffs Cannot Establish Likelihood of Success on the Merits

The FACE Act imposes liability on anyone who, "by force or threat of force or by physical obstruction, intentionally injures, intimidates, or interferes with" any person lawfully exercising First Amendment religious freedom at a place of religious

worship. 18 U.S.C. § 248(a)(2). The statute requires proof of three independent elements: (1) force, threat of force, or physical obstruction; (2) with the specific intent to injure, intimidate, or interfere; (3) directed at a person seeking to exercise religious freedom; (4) at a place of religious worship.

**1. The FACE Act's Religious Worship Provision Has Never Been Applied in the Ninth Circuit and Should Not Be Extended to Prevent Routine Protest Activity.**

The FACE Act's religious worship provision has never been the subject of a final merits ruling by any court in the Ninth Circuit. The entire body of case law on which Plaintiffs rely (*Mahoney, Kraeger, Op. Rescue, Gregg, Lindgren, Scott*) arises from the statute's reproductive health clinic provision, which has a different litigation history from the religious provision. The reproductive health clinic cases that Plaintiffs cite involved dedicated, sustained, coordinated blockades by anti-abortion groups whose sole stated purpose was to physically prevent access to abortion services. Courts applying the statute in that context confronted organized groups that chained themselves to clinic doors, disabled vehicles in driveways, and lay in entranceways requiring attendees to physically step over their bodies. See, e.g., *United States v. Gregg*, 32 F. Supp. 2d 151, 156 (D.N.J. 1998) (defendants "laid in entrance"); *United States v. Mahoney*, 247 F.3d 279, 283 (D.C. Cir. 2001) (defendants "knelt or lay within five feet of … the main entrance").

The conduct Plaintiffs have alleged here is radically different. It involves expression of an opposing political opinion rather than a dedicated, sustained, blockade explicitly designed to prevent people from worshiping. The First Amendment protects such activity. Plaintiffs' interpretation of the FACE Act's religious worship provision transforms a statute designed to address targeted, sustained physical attacks into a general federal prohibition on political protest activity near houses of worship. That result is not authorized by the statute, its legislative history, or the First Amendment.

Plaintiffs misrely on *Helmann v. Codepink Women for Peace*, et al, 2025 WL 3030582 (C.D. Cal. 2025). *Helmann* involved protest at a synagogue that hosted an illegal land sale. Plaintiffs alleged the protest interfered with their right to buy property in Israel, which they described as a central tenet of their religious beliefs. The *Helmann* Court did not issue a preliminary injunction. However, the Court did grant one Defendants' Motion to Dismiss entirely. The case only survives as to whether the use of the inverted red triangle in a social media post transforms innocuous language into a true threat, which is irrelevant to the Plaintiffs' complaint.

Further, Plaintiffs' argument in Footnote 2 of their brief states that § 248(a)(2) requires no causal nexus between Defendants' motivation and the victims' religious activity. This is a novel legal theory that has not been adopted in this Circuit. Plaintiffs argue that unlike § 248(a)(1) (which requires that obstruction occur "because" the target is seeking reproductive services), § 248(a)(2) requires only that

the target happen to be exercising religion. Plaintiffs' reading directly contradicts the stated goal of the provision's sponsor, who requested that it "do no more than give religious liberty the same protection that [the FACE Act] would give abortion," to address recent violence, including a series of arson attacks against churches. 139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993).

Plaintiffs' theocratic definition would outlaw any protest near a church, even if the protesters were demonstrating against political positions taken by atheist speakers at an expressly political event.

**2. The March 19 Protest Was Constitutionally Protected**

Standing up and shouting a political slogan during a public political event is political speech, not a FACE Act violation. The First Amendment protects not only popular speech but speech that is unwelcome, disruptive, and offensive. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011). Courts have long recognized that loud, disruptive, even offensive protest in publicly accessible spaces does not become illegal merely because it is disturbing. A person who enters a publicly advertised event and shouts a political slogan is engaged in expressive conduct. An injunction restraining speech is not an appropriate response.

Plaintiffs argue that shouting constitutes "force" under the FACE Act, citing the statute's broad definition and cases involving physical contact. *Spitzer v. Cain*, 418 F. Supp. 2d 457, 473 (S.D.N.Y. 2006). "Force" under the FACE Act requires physical pressure directed against a person or thing. The phrase "threat of force"

pursuant to the FACE Act refers "to a serious expression of intent to inflict bodily harm." *Grand v. City of Univ. Heights*, 159 F.4th 507, 516 (6th Cir. 2025). Shouting political disagreements when an atheist begins her political speech, is protected speech. Such conduct cannot legally constitute assault.

Plaintiffs claim that a wide variety of obstructive acts can constitute physical obstruction and cite to *James v. Rescue*'s collection of cases. 705 F. Supp. 3d 104, 125-125 (S.D.N.Y. 2023). The first instance involves "standing directly in front of a patient and preventing her from approaching a clinic while the defendants attempted to give her literature" and standing "directly in front of a clinic door and refusing to move until a security guard approached". *Id*. (internal brackets omitted) [citing *New York v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y. 2006) and *New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 194 (2d Cir. 2001)]. *Rescue*'s collection of cases also included a criminal conviction for intentionally kneeling in front of a clinic door so that the door could not be opened. *Id*. [citing *United States v. Dugan*, 450 F. App'x 20, 22 (2d Cir. 2011)] Another example of physical obstruction is "crowding patients, walking very closely to them and stepping in their way, making it very difficult for patients to maneuver around them." *Id*. (internal brackets omitted) [citing *New York v. Kraeger*, 160 F. Supp. 2d 360, 376]

*Rescue* involved people putting heavy-duty locks on Planned Parenthood front gates and then laying down in front of the entrance to the clinic's parking lot to stop cars from entering. Another defendant blocked the doorway for about two hours. A

third defendant kneeled in an interior clinic doorway, making it impossible to pass. Others were convicted of crimes after refusing to leave when police officers commanded them, resisting arrest, and having to be physically carried out. *Id.* at 126-129. *Rescue* is simply inapplicable in this regard.

*Rescue's* applicability is triggered in its description of activity that did not constitute physical obstruction. Extending an arm to "offer literature to clients" passing an "arm in front of an escort who was walking alongside a client" and attempting "to walk next to the client and offer literature" were found not to be physical obstruction because the defendant "never stopped the forward progress of an individual seeking reproductive services." *Id.* (internal brackets omitted) [citing *United States v. Vazquez*, 145 F.3d 74 (2d Cir. 1998)] The second example involved a situation where a defendant approached a patient head on to try to provide her a pamphlet. "As the group stepped around him, the defendant made no effort to interfere with their progress toward the clinic." This did not constitute physical obstruction in violation of the FACE Act since "the patient did not encounter any significant or unreasonable delay in leaving the clinic." *Id.* (internal brackets omitted) [citing *New York ex rel. James v. Griepp*, 11 F.4th 174 (2d Cir. 2021)]

The alleged conduct here is not physical obstruction per the *James* line of cases. Nothing that the protesters did comes close to placing heavy duty locks, blocking doors for hours, or laying down on a parking lot to block cars. Rather, Plaintiffs appear to assert that Named Defendants' decision to express their political

views loudly, to protest on sidewalks, and to carry signs constituted physical obstruction. Such a standard cannot be harmonized with the First Amendment.

The Supreme Court's decision in *Snyder v. Phelps* is instructive. Members of the Westboro Baptist Church protested at a military funeral with signs reading "God Hates F*gs" and "Thank God for Dead Soldiers" — conduct found deeply offensive and emotionally devastating by the deceased soldier's father. The Court unanimously held that such protest, occurring on public property, was protected speech. *Snyder v. Phelps*, 562 U.S. at 460-61. Defendants' alleged conduct on March 19 includes entering a publicly advertised political event and voicing protest, implicating the same constitutional values. The fact that their protest occurred inside a building, rather than outside, does not change the analysis; it was a publicly advertised, ticketed political event, not a private religious ceremony.

Turner-Brown's alleged "slamming" and Miller's alleged pushing of a worshipper are vigorously disputed and covered elsewhere. (Miller and Turner-Brown Decl. ¶ ¶ 4-6; 5-7,

**3. The March 19 Egress Claim Is Legally Insufficient.**

Plaintiffs claim that Miller, Turner-Brown, and others violated the FACE Act by occupying the narrow public sidewalk outside the Church's front entrance as the March 19 event concluded, thus rendering egress "impassable" or "unreasonably difficult." § 248(e)(4). This claim fails for several independent reasons.

***a. The sidewalk protest did not render egress impassable.***

Plaintiffs' own account establishes that egress was not impassable. Plaintiffs identify no attendee who was physically unable to exit the building. The "bottleneck" they describe was a short delay in exiting, not "impassable" egress.

***b. The police recognized protest on a public sidewalk adjacent to a place of worship as protected First Amendment activity***

Plaintiffs acknowledge that Carlsbad Police declined to intervene in the sidewalk demonstration, explaining that protesters were on a public sidewalk. Police officers on the scene, exercising their professional judgment, concluded that people demonstrating on a public sidewalk were within their rights. Plaintiffs provide no persuasive reason as to why the Court should make a different determination.

The First Amendment protects demonstrations on public sidewalks, even when those sidewalks abut places of worship, even when the demonstration is loud and unpleasant, and even when it disrupts events taking place inside nearby buildings. See *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 907-08 (1982) (holding that organized boycott and protest activity, even where it caused economic harm, was protected). Plaintiffs cannot use the FACE Act to transform constitutionally protected activity into a federal crime simply because it caused inconvenience.

***c. Turner-Brown's arrest was for impeding a police officer, not for FACE Act obstruction.***

Turner-Brown's was detained for allegedly impeding a police officer. This is a distinct offense, not covered by the FACE Act. The fact that she moved around a

police line and interacted with a departing attendee does not constitute a finding that she rendered egress "impassable" or "unreasonably difficult" under § 248(e)(4).

**4. The September 7 Event Was Not at a "Place of Religious Worship"**

The FACE Act applies only to interference with religious exercise at "a place of religious worship."[6] 18 U.S.C. § 248(a)(2) Although the statute does not define that term, the Second Circuit has: "anywhere that religious adherents collectively recognize or religious leadership designates as a space primarily to gather for or hold religious worship activities." *Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F.4th 47, 57 (2d Cir. 2021) *Jingrong* cited the Joint Conference Report as "the most persuasive evidence" of congressional. *Id.* at 59. That report, prepared in conjunction with the FACE Act's passage asserts that the law only protects against conduct "occurring at or in the immediate vicinity of a place of religious worship, such as a church, synagogue, or other structure used *primarily as a place for worship*." *Id.* [citing H.R. Rep. No. 103-488, at 9 (Conf. Rep.) (1994)] (emphasis in original)

Because the Legacy International Center does not qualify as a "place of religious worship" per § 248(e)(2), the FACE Act claims arising from the September 7 event fail. This independently defeats Plaintiffs' likelihood-of-success arguments.

**5. The Intent Element Is Not Established.**[7]

---

[6] This argument was briefed thoroughly in Defendants' Motion to Dismiss, pp. 15-16. Defendants have requested judicial notice of the Legacy International Center's primary use as a commercial hospitality facility. (RJN, Exs. C, D)
[7] This argument was briefed thoroughly in Defendants' Motion to Dismiss, pp. 16-22.

The FACE Act's religious worship provision requires a defendant act with the intent to injure, intimidate, or interfere with a person "lawfully exercising or seeking to exercise the First Amendment right of religious freedom." 18 U.S.C. § 248(a)(2). The statute's text establishes that the defendant must be aware of, and specifically direct their conduct at, religious exercise. *United States v. Gregg*, 32 F. Supp. 2d 151, 156 (D.N.J. 1998) (intent means "intending to perform the act and aware of the natural and probable consequences of it"), *aff'd*, 226 F.3d 253 (3d Cir. 2000).

Plaintiffs argue that a defendant is liable per the FACE Act regardless of whether religious exercise motivated their conduct, so long as the target happened to be exercising religion. (Mtn., 17 n.2) No court in this Circuit has adopted the theory and it would be legal error to do so because it flies in the face of the legislative history of the statute which shows the sponsor sought to "give religious liberty the same protection that [the FACE Act] would give abortion." This forecloses a finding of "high likelihood" of success on the merits.

The March 19 event was publicly promoted as "Exploring Israel's Statehood and the Palestinian Refugee Issue," featuring Dr. Wilf, described in the promotional materials as a former member of the Israeli Knesset and an expert on "the current conflict in the Middle East." The event description contained no reference to prayer, worship, religious exercise, or the theological beliefs of the host organization. A person who decided to protest based on those public materials would reasonably understand the event as a political speech about a hotly contested geopolitical dispute.

Turner and Brown protested Dr. Wilf's political speech on March 19 did so in response to that public description. (Miller and Turner-Brown Decl. ¶ ¶ 4-6; 5-7). Their protest was directed at Wilf's political speech. That the speech was preceded by prayer does not establish their intent was to interfere with religious exercise. They had no basis to know that the evening would include an extended period of interfaith worship, prayer, and hymn-singing.

The FACE Act requires intent to interfere with religious exercise. Liability cannot be established merely because religious exercise occurred before a political speech. To hold otherwise would impose FACE Act liability on any protester who demonstrates outside a church hosting a political event. That cannot be the law.

Plaintiffs had already significantly undermined their claim by admitting in the FAC that Werth's motivation on September 7 was political, saying she protested outside the Legacy Center Resort and Spa because people inside were "feasting, listening to music, and raising money for genocide" (FAC ¶171).

Plaintiffs negate the entirety of their FACE Act claims against Werth and other protesters on September 7 when they attach her social media video as an exhibit. [Dkt 35-4, Ex. 10 (Benett)]. Werth explains the group is protesting on September 7 because it is "funded by StandWith Us" which "raises money for IDF soldiers who are currently killing children in Gaza," that the attendees are "raising money to kill children, ethnic cleansing" and that she Provance, Miller, Turner-Brown and others are there because "this is not the world that we want to be in." *Id.*

**B. PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM.**

Plaintiffs argue two forms of irreparable harm: (1) an ongoing chilling effect on their religious exercise, and (2) a threatened future disruption of the June 10, 2026 service. The facts alleged here to not meet this standard.

**1. The Chilling Effect Argument Is Speculative and Self-Inflicted.**

Plaintiffs contend that Defendants' past conduct has chilled their religious exercise, causing the Church and the Alliance to cancel events. But the claimed chill is not traceable to Defendants' conduct. Plaintiffs have not alleged, and cannot show, that Defendants have appeared at, or intended to appear at, any event in the intervening period between September 7, 2025 and the filing of this motion. The FACE Act does not require the court to enjoin all protest activity near a church whenever a church decides, of its own accord, to suspend activities in response to demonstrations it finds uncomfortable, and certainly not on a record this thin.

Moreover, Plaintiffs' own declarations reflect that they intend to proceed with the June 10, 2026 service. A party claiming ongoing irreparable harm from a chilling effect cannot simultaneously announce an upcoming event without undermining the urgency of that claim. Indeed, it is well established that "subjective chill" is insufficient. *Laird v. Tatum*, 408 U.S. 1, 14 (1972)

**2. The Threat of Future Harm Is Too Speculative for Injunctive Relief.**

Plaintiffs base their request for a prospective injunction on the assertion that Defendants will disrupt the June 10, 2026 service. But the relevant legal standard

requires a "definitive threat of future harm," not mere possibility. *Id*. Plaintiffs have not shown that Defendants have announced any intent to appear at the June 10 event, that they have organized activity directed at that event or events at the Church or Alliance after September 7, or that any of them have said they will.

The inference that Defendants will show up based on their past conduct and political views is precisely the kind of speculative, attenuated harm that the Supreme Court forbids. *Id*. The appropriate remedy for a threatened future disruption is not a prior restraint injunction. Plaintiffs have not demonstrated that alternatives fail.

Plaintiffs devote an entire section of their brief arguing that the injunction is necessary because an injury is sufficiently likely rather than speculation (Mtn, pp. 24-28) and rely heavily on an antitrust case, *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1023 (9th Cir. 2016), with nothing in common with the facts at hand other than it involves a preliminary injunction.

However, Plaintiffs insist that *Boardman* helps their position because a preliminary injunction was properly granted in *Boardman* “even though no such acquisition was pending; the court reasoned that the defendant had a history of negotiating in secret, which presented a sufficient threat that it would do so before litigation concluded.” (Mtn, p. 25:1-3).

The *Boardman* Plaintiffs argued (with the support of “market concentration statistics and expert declarations”) that the “acquisition would create a monopsony.” *Id*. at 1022-1023. Defendants asserted that there was “no *immediate* danger of

irreparable harm" because they terminated the proposed acquisition, and stipulated they would not renew it while the Attorney General investigated. *Id*. at 1023. However, the agreement allowed defendants to unliterally terminate the stipulation with 60-days' notice who had a history of negotiating in secret. *Id*.

Plaintiffs fail to make a showing similar to *Boardman*. First, a preliminary injunction that restricts political protest is subject to a far more exacting standard than an antitrust case. *Cf. In re Dan Farr Prods.*, 874 F.3d 590, 593 n.2 (9th Cir. 2017) (strict scrutiny standard of review for prior restraints) Second, Plaintiffs provide no "market concentration statistics and expert declarations". They provide declarations, videos and photographs showing Named Defendants are political activists with different politics than Plaintiffs.

Plaintiffs further reveal their unconstitutional aims by complaining that Miller "euphemistically bragged" about challenging entities "*via peaceful strategic actions*." (Mtn, p. 25:11-14) (emphasis added) Peaceful strategic actions do not justify a prior restraint on political speech on a public sidewalk.

Even Plaintiffs' most dramatic justification---Provance purportedly proclaiming "No Easter during a genocide!" (Mtn. p. 25:20)--- fails for the following reasons: (1) it is not clear when this happened; (2) it is not alleged to have been about The Mission Church; (3) it is unclear whether the comment was made during Easter services; (4) it is even less clear whether the comment disrupted any religious service

at all. These issues severely undermine the evidentiary value of Paragraph 49 of Mr. Bennett's declaration.

The phrase "Attack me, you little b****!" also lacks evidentiary value because it is not even clear if the statement was made to an attendee of a religious event. Exhibit 18's video shows several individuals, rendering it impossible to determine who said it and to whom. Plaintiffs offer other examples, such as Provance waving Palestinian flags at a pro-Israel organization's annual gala, which prove that Plaintiffs seek to silence political speech about Israel and Palestine that fail to align with Plaintiffs' opinions about the matter. Plaintiffs' claims about the "egregious nature of Defendants' violations" on March 18 mischaracterizes the evidence: defendants did not sneak into Dr. Wilf's political speech; they preregistered, entered like everyone else and expressed political opposition to a political speech. That is political protest, not egregious behavior.

Next, Plaintiffs try to overcome speculation by speculating that the disruptions "obviously involved lengthy planning preparation with different collaborators to maximize harm. (Mtn, p. 26:12-13) In support, Plaintiffs offer only two facts: "the coordination of the action" and Defendants' concealing their identities.

Plaintiffs complain Named Defendants "have long viewed the conflict in Gaza as an existential crisis. That crisis has become an obsession, documented across hundreds of social media posts and protests." (Mtn, p. 27:2-4) Defendants' politics differ from Plaintiffs'. That does not justify a prior restraint injunction.

Plaintiffs even admit that "[d]efendants have every right to their views." (Mtn, p. 28:2) while somehow still insisting they must be punished for those very views by way of a preliminary injunction forbidding them from expressing their political views on a public sidewalk. Plaintiffs have not and cannot harmonize the disconnect.

**C. THE BALANCE OF EQUITIES DOES NOT FAVOR PLAINTIFFS.**

Plaintiffs assert that the balance of equities "sharply tips" in their favor. It does not. Although they argue that "Defendants' actions continue to actively chill Plaintiffs' free exercise and relatedly present a threat of likely future disruption of events", the only support they provide is reference to pages 16-17 of their brief, which merely provides subjective and speculative concerns about possible political protest in the event Plaintiffs host another political event.

Next, Plaintiffs add more speculation by claiming that "these disruptions will likewise lead the Church and Alliance to continue to lose members who fear for their safety and wish to worship in peace." (PI at 28:25-26) Plaintiffs provide no facts or evidence that they have lost members because of Defendants actions.

Plaintiffs' assertion that any harm to Defendants would be minimal is wrong. The injunction would infringe upon Defendants' First Amendment Rights to protest. This is a fundamental right that should not be conceded because Plaintiffs do not like Defendants' political views. Plaintiffs' overly broad "in concert with" injunction also

creates liability for Named Defendants if third parties public sidewalk and Plaintiffs allege they know one another.

None of the cases that Plaintiffs cite address that concern. In *Rescue*, the Office of the New York State Attorney General moved for a preliminary injunction to enjoin defendants from being within thirty feet of any reproductive health facility in New York State. The *Rescue* Court granted a fifteen-foot buffer zone. *Rescue*, 705 F. Supp. 3d at 137-138, after a tremendous showing of past harm and viable threat of future harm. Here, no buffer zone is necessary to ensure that worshipers can access the Church as no worshipers were prevented from entering or leaving the Church. The facts in *Madsen* are also inapplicable because in that case, the anti-abortion activity had negatively impacted the health of the patients seeking treatment and in fact interfered with the administration of services there. *Madsen*, 512 U.S. at 758-769. No such analogous interference happened in the case at bar.

**D. THE PROPOSED INJUNCTION IS UNCONSTITUTIONAL**

Even if Plaintiffs had established the other preliminary injunction factors, the proposed injunction fails independently as a matter of constitutional law. Part 2 of the proposed injunction would bar named Defendants from demonstrating on the public sidewalk abutting the Mission Church's entrance and parking lot for the pendency of this litigation. This is a prior restraint on speech in a traditional public forum, and it does not satisfy controlling constitutional standards.

**1. Public Sidewalk Protest Is Entitled to Maximum Protection.**

"Public streets and sidewalks" are "the archetype of a traditional public forum." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (quoting *Snyder v. Phelps*, 562 U.S. 443, 456, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)); *accord United States v. Grace*, 461 U.S. 171, 177, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983) (noting that "'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums'") *Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035, 1046 (9th Cir. 2018).

**2. The 'In Concert With' Language Is Unconstitutionally Overbroad.**

The proposed injunction binds not only the four named Defendants but "all other persons acting on their behalf or in concert with them." This language binds individuals who have had no notice of the injunction, have not been served, and have committed no violation.

In the First Amendment context, such a provision creates extraordinary chilling effects: any person who wishes to demonstrate near the Mission Church must now determine whether they might inadvertently be "in concert with" one of four named defendants, on pain of contempt. Named Defendants would be obliged to prevent anyone they know from exercising their First Amendment rights at the Mission Church as well. That uncertainty suppresses constitutionally protected activity and cannot be squared with the First Amendment.

**3. The Proposed Injunction Constitutes Viewpoint Discrimination.**

The proposed injunction targets four individuals identifiable by their political views: they oppose Plaintiffs' pro-Israel political positions. The injunction would bar these specific individuals from demonstrating on the public sidewalk in front of the Mission Church—while leaving Plaintiffs' supporters, members, and allies free to use the same sidewalk without restriction.

Content-based and viewpoint-based restrictions on speech in traditional public forums are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Injunctions that silence critics and leave supporters free to speak is quintessential viewpoint discrimination. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Defendants' alleged conduct itself was expressive and the four individuals targeted for injunctive relief are selected based on the content of their expression (i.e. pro-Palestine protest). Other individuals holding pro-Israel signs, would not be bound, effectively creating a viewpoint-selective exclusion from a traditional public forum. This is precisely the outcome the First Amendment forbids, regardless of whether the injunction's surface justification is conduct-based. The First Amendment prohibits viewpoint discrimination unless the government itself is speaking. *Junior Sports magazines Inc. v. Bonta*, 80 F.4th 1109, 1123 (9th Cir. 2023)

## V. CONCLUSION

Plaintiffs demand a prior restraint against four private citizens, barring them from a public sidewalk, based on two incidents of political protest that did not violate

the FACE Act and under an application of the statute that has never been sustained by a court in this Circuit. That is not what preliminary injunctions are for.

Defendants take seriously their obligations under the law. They are not prepared to surrender their First Amendment rights to demonstrate, to protest, and to be heard solely based on Plaintiffs' disagreement with Defendants' political opinions and Plaintiffs' speculation about future conduct. The Constitution requires more before silencing political dissent, even dissent that is loud or unwelcome.

For the foregoing reasons, this Court should deny Plaintiffs' motion for a preliminary injunction in its entirety. In the alternative, if this Court finds that any injunctive relief is warranted, it should limit such relief to Part 1 of the proposed injunction enjoining physical obstruction of ingress and egress.

DATED: April 21, 2026

RESPECTFULLY SUBMITTED,

LAW OFFICES OF THOMAS B. HARVEY

BY: ______________________

Thomas B. Harvey

LAW OFFICES OF BEN GHARAGOZLI

BY: *Ben Gharagozli*

Ben Gharagozli

Attorneys for Named Defendants

**RULE 5 CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies the Rule 5 meet and confer requirement has been satisfied. Specifically, the undersigned counsel met and conferred with Plaintiffs' counsel via videoconference on March 27, 2026.

DATED: April 21, 2026

LAW OFFICES OF THOMAS B. HARVEY

BY: ______________________________

Thomas B. Harvey

**CERTIFICATE OF SERVICE**

All Case Participants are registered for the USDC CM/ECF System

I hereby certify that on April 21 2026, I electronically filed the foregoing with the clerk of the Court for the United States District Court, Southern District of California by using the CM/ECF System.

Participants in the case will be served by the CM/ECF System

Dated: April 21, 2026 By: ______________________

Thomas B. Harvey