Thomas B. Harvey (SBN 287198)
**Law Offices of Thomas B. Harvey**
365 E. Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805)768-4440
Email: tbhlegal@proton.me

Ben Gharagozli (SBN 272302)
**Law Offices of Ben Gharagozli**
7655 Winnetka Avenue, #2010
Winnetka, CA 91306
Telephone: (310) 272-9211
Facsimile: (855) 628-5517
Email: ben@lobglaw.com

Mark Kleiman (SBN 115919)
**Kleiman/Rajaram**
12121 Wilshire Blvd., Suite 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Email: mark@krlaw.us

Attorneys for Defendants, Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, and Maya Karalius

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Christian and Jewish Alliance Inc., a California not-for-profit corporation, Ezra Ministries, a California not-for-profit religious corporation, d/b/a The Mission Church, and Ruth Mastron,<br><br>*Plaintiffs,*<br><br>v.<br><br>Daniel Brunner, Aimee Magda Werth, Kristina Turner-Brown, Patrick Hartley, Sasha Spite Miller, Jacob Pagaduan, Jonathan Provance, Maya Karalius, and Does 1-40,<br><br>*Defendants.* | Case No. 3:25-cv-02992-W-AHG<br><br>Judge: Hon. Andrew G. Schopler<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS IN SUPPORT THEREOF**<br><br>Date: June 9, 2026<br>Time: 10:00 am<br>Location: Edward J. Schartz United States Courthouse 221 West Broadway San Diego, CA 92101 |

# TABLE OF CONTENTS

I. INTRODUCTION ........ 2

II. ARGUMENT ........ 2

A. PLAINTIFFS FAIL THE SECOND PRONG. ........ 2

1. Defendants' Anti-SLAPP Motion Is a Factual Challenge. ........ 2

2. There Is Not Dispute of Material Fact to Permit Plaintiffs to Survive Dismissal Pursuant to the Fed. R. Civ. Proc. 56(a) Standard.. ........ 3

3. Defendants' Consensual Entry Defeats the Trespass Claim.. ........ 4

a. *Defendants Did Not Exceed Consent*. ........ 4

b. *The Failure to Leave Theory Independently Fails.* ........ 6

c. *The Fraud and False Pretenses Theory Fails..* ........ 7

4. Case Law and Statute Confirm a Free Speech Defense in California Law.. ........ 8

5. Defendants' Position Would Not Violate the First Amendment.. ........ 12

III. CONCLUSION ........ 13

## TABLE OF AUTHORITIES

### CASES


*Albertson's, Inc. v. Young*, 107 Cal.App.4th 106 (Cal. 2003)....10,11

*Allred v. Harris*, 14 Cal.App.4th 1386 (Cal. 1993) .... 9-10

*Allred v. Shawley*, 232 Cal.App.3d 1489 (Cal. 1991)....11

*Church of Christ in Hollywood v. Superior Court*, 99 Cal.App.4th 1244 (Cal. 2002)....11,12

*CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136 (9th Cir. 2022) ....13

*Gunn v. Drage*, 65 F.4th 1109 (9th Cir. 2023)....2

*Herring Networks Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021)....2

*Marsh v. Alabama*, 326 U.S. 501 (U.S. 1946) ....9

*Park Mgmt. Corp v. In Def. of Animals*, 36 Cal.App.5th 649 (Cal. 2019) ....11

*Peninsula Guardians, Inc. v. Peninsula Health Care Dist.*, 200 Cal.App.4th 1108 (Cal. 2011)....2

*Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, (9th Cir. 2017)....2

*Porter v. Kenan Advertising Group*, 2025 WL 1417172 (Cal. 2025)....7

*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8*, 55 Cal.4th 1083 (Cal. 2012)....9

*Reed v. Town of Gilbert*, 576 U.S. 155 (U.S. 2015) ....8

*Robins v. Pruneyard*, 23 Cal.3d 899 (Cal. 1979) .... 12

*Schwartz-Torrance Investment Corp v. Bakery & Confectionary Workers' Union*, 61 Cal.2d 766 (Cal. 1964) .... 8,9

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) .... 7

*Trader Joe's Co. v. Progressive Campaigns*, 73 Cal.App.4th 425 (Cal. 1999) .... 11

**STATUTES AND CODES**

***Federal Rules***

Fed. R. Civ. Proc. 8 .... 2

Fed. R. Civ. Proc. 12 .... 2

Fed. R. Civ. Proc. 56(a) .... 3

**SECONDARY SOURCES**

Restatement (Second) of Torts § 892B .... 7

# I. INTRODUCTION

Plaintiffs concede the first prong and fail their burden on the second prong because they provide no affidavits in support. This is akin to a plaintiff opposing a summary judgment motion without opposing declarations. See *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017) (anti-SLAPP motion is analyzed per FRCP 8 and 12 standards when made "on purely legal arguments"; but "if it is a factual challenge, then the motion [is] treated as … a motion for summary judgment"). Here, the summary judgment standard applies because the motion is a factual challenge as it was accompanied by supporting affidavits denying wrongdoing. Even if the motion were "purely legal arguments", it should still be granted as consensual entry defeats a trespass claim.

# II. ARGUMENT

Plaintiffs concession of the first prong (Opp., p. 15:3-4) deems the first prong satisfied. See e.g. *Peninsula Guardians, Inc. v. Peninsula Health Care Dist.*, 200 Cal.App.4th 1108, 1120 (Cal. 2011) As such, Defendants will proceed to respond to Plaintiffs' arguments regarding the second prong.

## A. PLAINTIFFS FAIL THE SECOND PRONG.

### 1. Defendants' Anti-SLAPP Motion Is a Factual Challenge.

Plaintiffs concede that the anti-SLAPP motion cites "declarations" (Opp, p. 13:24). This is sufficient to end the inquiry. Indeed, where a defendant relies upon extrinsic evidence in an anti-SLAPP motion, the challenge is a factual one. *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) [citing *Herring Networks Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021) ("The defendant determines which motions she files, not the plaintiff.")]

Yet, Plaintiffs insist that the anti-SLAPP motion is not a factual challenge by pointing to a footnote in the anti-SLAPP motion that cites to *Planned Parenthood* and how to deal with legal sufficiency challenges. Footnote 13 (not footnote 12 as Plaintiffs'

claim) of the anti-SLAPP motion does not negate the extrinsic evidence that the anti-SLAPP motion relies upon. To the extent that the footnote created ambiguity, Plaintiffs' counsel never sought to meet and confer about the issue to clarify the matter, nor did they propound discovery. (Declaration of Ben Gharagozli & Thomas B. Harvey, ¶¶ 4-7) Instead, Plaintiffs proceeded on the incorrect presumption that the motion was based "on purely legal arguments" (notwithstanding the reliance on extrinsic evidence) and failed to support their opposition with a single declaration.

Footnote 13's reference to "Complaint" rather than "FAC" further undermines the reasonableness of Plaintiffs' determination that the anti-SLAPP motion was a legal challenge rather than a factual one. This is because the anti-SLAPP motion refers to the operative complaint as "FAC" (not "Complaint") throughout the entire motion.[1] This cements the contention that Defendants' footnote 13 was making reference to the legal standard and not making a concession that their anti-SLAPP motion is being made "on purely legal arguments". Indeed, as Plaintiffs' counsel is extremely sophisticated and experienced, this should have been a further indication to at least inquire of Defendants' counsel about the issue rather than merely presume that the anti-SLAPP motion is a purely legal challenge and fail to support their opposition with the requisite declarations and exhibits. Ultimately, Plaintiffs made an improper presumption, failed to inquire of Defendants' counsel to confirm and proceeded at their own peril.

2. <u>There Is No Dispute of Material Fact to Permit Plaintiffs to Survive Dismissal Pursuant to the Fed. R. Civ. Proc. 56(a) Standard.</u>

As Plaintiffs provide no evidence to rebut the evidence that Defendants' provided, there can be no dispute of material fact for Plaintiffs to survive dismissal.

The one exception found in Plaintiffs' opposition is reference to a declaration identifying Defendant Brunner at the Church.[2] (Opp. fn. 4). But that declaration was in

---

[1] The one exception on page 30 is followed by a citation to the "FAC".
[2] Plaintiffs' decision to dispute factual contentions (e.g. that Defendant Brunner was present at the March 19, 2025 event) further cements Defendants' contention that the anti-SLAPP motion is a factual challenge and not a purely legal one.

support of Plaintiffs' motion for preliminary injunction, not in support of Plaintiffs' opposition to Defendants' anti-SLAPP motion. Even if the Court were to consider that citation as evidence, Plaintiffs' only established factual assertion is that Defendant Brunner was identified outside the Church. This does not establish a trespass claim. More specifically, that declaration citation indicates that "Daniel Brunner was part of that mob. Brunner had registered for the Church's event in his own name." (Declaration of Mike Mahoney in Support of Preliminary Injunction, ¶ 24). Importantly, paragraph 23 of Mr. Mahoney declaration clarifies that the "mob" referenced in paragraph 24 was "outside the Church". (*Id.*, ¶ 23)

Plaintiffs' opposition cites to no other evidence at all as required by Fed. R. Civ. Proc. 56(c). Conversely, Defendants' declarations establish consensual entry and deny unlawful conduct. (Pagaduan Declaration, ¶¶ 8, 11, Turner-Brown Declaration, ¶¶ 4, 8, 12, Miller Declaration, ¶¶ 3, 9, Hartley Declaration, ¶ 4, 9, 11) Plaintiffs submitted no evidence to rebut them.

3. <u>Defendants' Consensual Entry Defeats the Trespass Claim</u>.

a. *Defendants Did Not Exceed Consent*

Even if the Court were to disregard the multiple affidavits supporting Defendants' anti-SLAPP motion and treat it as a purely legal argument, Plaintiffs have still failed to meet the second prong. Plaintiffs' trespass cause of action necessarily relies on the claim that certain Defendants entered the Church under false pretenses. (FAC, ¶¶ 96, 264, 265) However, the only facts they provided in support are the following: (1) that Defendant Miller registered two times (as "Sasha Spite" and "Sasha Miller"); (2) that Defendant Brunner registered with his own name to let "another disruptor …gain entry under false pretenses."; (3) certain defendants "gained entry to the sanctuary under the false pretense of being attendees."

Plaintiffs' furnished facts fail to remedy the conclusory nature of the "false pretenses" theory. Plaintiffs have not and cannot explain how registering under a

different name amounts to false pretenses especially in the context of trespass law. This is especially so as the FAC concedes that the March 19th event was open to the public without payment and only required that guests pre-register. (FAC ¶ 78) All of the Defendants charged with trespass registered for the event. As such, Plaintiffs' trespass claim must fail.

Plaintiffs attempt to address this issue by citing law about how a property owner may set limits on what conduct is permitted on land and can revoke a license for any reason. (Opposition, p. 16). However, no allegation in the FAC says that Plaintiffs set such limits on attendees at the March 19, 2025 event. The FAC does not allege (1) that attendees were required to waive their right to political protest as a condition of entry; (2) that attendees were required to agree to not express political views that disagreed with Plaintiffs' pro-Israel stance as expressed by the invited atheist speaker. The Opposition analyzes the issue as though such preconditions were made. They were not.

Plaintiffs rely on this allegation: "On March 19, 2025, the Church gave limited consent to enter its property only to individuals who registered by name and only for the purpose of attending the March 19 Worship Service as audience members." (FAC ¶ 261) But that allegation does not identify any limitation on conduct once inside, only a limitation on who could enter. The difference is critical. Plaintiffs describe the entry condition but plead no conduct condition. Without an alleged conduct condition, there is nothing for Defendants to have exceeded.

Plaintiffs' allegation at paragraph 266 that Defendants "intentionally entered the Church's property for purposes other than to attend the March 19 Worship Service as audience members" raises more questions than it answers especially with the following paragraph using the term "worshipers" instead of "audience members". Defendants did enter as audience members but just so happen to be audience members who wanted to participate in the discussion. An audience member (to a political event where an atheist is presenting controversial political views about one of the most controversial political

issues of the current era) cannot be presumed or necessarily expected to remain silent. Audience members at such events frequently do participate in the political discussion.

Although Plaintiffs' do not cite to paragraph 79 of their FAC in their opposition, Defendants will address it out of an abundance of caution. The allegation focuses on the "worship" portion of the event. There is no allegation that any of the Defendants charged with trespass spoke up during the worship portion of the event. Rather, the inside defendants expressed their political opposition to the political speaker that began speaking after the prayers and hymns were finished. (FAC, ¶ 98). Plaintiffs' hope to sidestep this issue by characterizing Dr. Wilf's presentation about "Israel's religious history and current geopolitical status" as religious by claiming that it was "part of the worship service". (FAC, ¶ 86). However, an atheist former politician giving a presentation about geopolitical issues is not religious worship.

b. *The Failure to Leave Theory Independently Fails*

Plaintiffs argue as a second independent theory that even if Defendants had valid consent to enter, trespass occurred when each Defendant "intentionally and affirmatively refused to leave the Church's property" after being asked to do so. (FAC ¶ 271; Opposition, p. 9.) This theory fails for two independent reasons.

First, the failure-to-leave theory collapses into the exceeded-consent theory and fails for the same reason. If Defendants' expressive conduct during Dr. Wilf's presentation was constitutionally protected, then the Church's revocation of consent to continue that protected expression raises the identical constitutional problem. A property owner cannot bootstrap a trespass claim by revoking consent that it was never entitled to condition on political silence in the first place. Plaintiffs cannot use the moment of ejection to launder a trespass claim that fails at the point of entry.

Second, a brief delay during physical removal cannot independently constitute tortious trespass. Plaintiffs' theory would mean that every protester physically escorted from every public event commits a separate and independent tort in the moments it

takes to be removed. No California authority supports that proposition. The question of whether any Defendant's did not immediately submit to being escorted out crossed the line into independent tortious conduct is at minimum a disputed factual question that cannot be resolved against Defendants under either Rule 12 or Rule 56 without supporting evidence, which Plaintiffs did not provide.

Critically, the declarations before this Court establish that Defendants complied when asked to leave. (See e.g. Hartley Declaration, ¶ 9) Plaintiffs submitted no evidence to the contrary. Per the summary judgment standard , the absence of any opposing declaration on this point is fatal to Plaintiffs' failure-to-leave theory.

c. *The Fraud and False Pretenses Theory Fails.*

Plaintiffs' third theory is that even valid consent is vitiated when induced by fraud, relying on *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), *Porter v. Kenan Advertising Group*, 2025 WL 1417172 (Cal. 2025), and Restatement (Second) of Torts § 892B. (Opposition, p. 18.) The theory fails on its own legal terms and is constitutionally impermissible.

The Restatement test that Plaintiffs invoke requires that the mistake induced by fraud concern "the nature of the invasion of his interests or the extent of the harm to be expected from it." Restatement § 892B(2). But at a free, publicly advertised event on Israeli statehood and Palestinian refugee rights, one of the most actively contested geopolitical issues of our time, attended by 400 members of the public including 200 members of the local Jewish community with no affiliation to the Church, the prospect of political disagreement being voiced was entirely foreseeable. Plaintiffs cannot credibly claim they were mistaken about "the extent of the harm to be expected" from hosting a free public political forum on this subject.

The cases Plaintiffs cite do not support extending this doctrine to political protest at a public event. *Theofel* involved computer fraud (unauthorized access to private electronic communications). *Porter* (an unpublished case) involved commercial deception

in a business context. Neither involved expressive political conduct at a public event, and neither supports creating new law.

Most fundamentally, Plaintiffs' fraud theory is viewpoint-discriminatory on its face and therefore constitutionally impermissible. Under Plaintiffs' theory, a registrant who enters with intent to applaud Dr. Wilf's presentation commits no fraud. A registrant who enters with intent to express disagreement commits fraud sufficient to void consent entirely. That distinction turns solely on the content or viewpoint of the speech the registrant intends to express. A consent regime that penalizes entry based on the viewpoint the entrant plans to voice is a textbook viewpoint-based restriction, the most disfavored category of speech regulation under the First Amendment. *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (U.S. 2015). Plaintiffs cannot launder a viewpoint-discriminatory entry restriction through the law of fraud.

4. <u>Case Law and Statute Confirm a Free Speech Defense in California Law</u>.

Defendants' argue that a public event open to all registrants necessarily weakens possessory exclusivity that underlies a trespass cause of action. This is far from controversial. *Schwartz-Torrance Investment Corp v. Bakery & Confectionary Workers' Union*, 61 Cal.2d 766 (Cal. 1964) ("Schwartz"). It is that logic that created the California free speech defense Plaintiffs insist Defendants have failed to prove.

In *Schwartz*, the California Supreme Court reversed a trial court's judgment enjoining a union and its members from entering the owner's property to picket. The plaintiff in that action sued to enjoin a union from trespassing on plaintiff's property after the union picketed. In holding that an owner of a shopping center "is not entitled to enjoin the union from so picketing", the California Supreme Court acknowledged the "conflicting interests: plaintiff's assertion of its right to the exclusive use of the shopping center premises to which the public in general has been invited as against the union's right to communication of its position which, it asserts, rests upon public policy and constitutional protection." *Id.* at 767-768.

The *Schwartz* Court also explicitly held that the union's interest in picketing is not diminished "because it may communicate its message at other, admittedly less advantageous, locations off plaintiff's premises." *Id.* at 770. The plaintiff's interests "emanate[] from the exclusive possession and enjoyment of private property." Since the plaintiff had "fully opened his property to the public", the plaintiff "suffers no significant harm in the deprivation of absolute power to prohibit peaceful picketing upon property to which it has invited the entire public." *Id.* at 771. Indeed, "[t]he more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Id.* [citing *Marsh v. Alabama*, 326 U.S. 501, 506 (U.S. 1946)] Accordingly, the *Schwartz* Court held that "the defendant's interest in picketing outweighs plaintiff's interest in vindicating a theoretical invasion of its right to exclusive control and possession of private property." *Id.* at 772.

Constitutionally speaking, there is no compelling reason why picketing by a labor union should be different from protesting in favor of Palestinian rights at an event that was open to the public. Plaintiffs; trespass cause of action must fail.

"Since at least 1964, when this court decided [*Schwartz*], California law has protected the right to engage in labor speech—including picketing, distributing handbills, and other speech activities—on private land in front of a business that is the subject of a labor dispute." *Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8*, 55 Cal.4th 1083, 1095-1096 (Cal. 2012)

Plaintiffs' opposition omits citation to *Schwartz* but does cite *Ralphs Grocery Co.* Plaintiffs' attempt to sidestep the black letter law, insisting that the Church is not open to the public and does not function as a traditional public forum.

"As a general rule, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership….The right to exclude persons exercising First Amendment

rights, however, is not absolute." *Allred v. Harris*, 14 Cal.App.4th 1386, 1390 (Cal. 1993) (internal citations omitted).

Plaintiffs' reliance on *Albertson's, Inc. v. Young*, 107 Cal.App.4th 106 (Cal. 2003) is misplaced. "The test that courts must apply is whether, considering the nature and circumstances of the private property, it has become the functional equivalent of a traditional public forum." *Id.* at 110. "The size of the business is simply a factor to be weighed in balancing the competing interest of the owner and society—the smaller the business, the more weight the owners' rights will have." *Id.* at 119 "A location will be considered a quasi-public forum only when it is the functional equivalent of a traditional public forum as a place where people choose to come and meet and talk and spend time." *Id.* at 121. Albertson's endeavored "to do business as a convenience store and …its premises are designed to get customers in and out very quickly." *Id.* at 122.

It is safe to say that a church is a place where "people choose to come and meet and talk and spend time." In fact, one of the primary purposes of a church is for people to engage in those activities. Although the FAC provides conclusory allegations that it is not a traditional public forum (FAC, ¶¶ 21, 22), the specific facts allege tell a different story. Paragraph 22 alleges that it contains chairs that face a stage in rows and large screens facing the audience that portray what is happening on the stage. The FAC alleges that about 400 people attended the event, including 200 members of the local Jewish community. The sanctuary was nearly at its 450 seat capacity. (FAC, ¶ 80) With due respect to all faiths, non-Christians do not typically attend a Christian Church for religious purposes. The role of the main speaker (Dr. Wilf) and the attendance of so many non-Christians at a church at an event that was open to the public subject only to registration confirms that this was a public forum to discuss political ideas related to Israel-Palestine. A church hosting a political event open to the public is simply not analogous to an Albertson's grocery store. Indeed, there is nothing to indicate that the

premises were designed to get attendees "in and out very quickly" as with Albertson's in *Young*.

What is more, where expressive activity is specifically related to the business use of the property, it tips the balance in favor of expressive access. *Young*, 107 Cal.App.4th at 123 [citing *Allred v. Shawley*, 232 Cal.App.3d 1489, 1504 (Cal. 1991)]. Here, Defendants protested a church being used as a political forum to promote an anti-Palestinian political agenda. This is yet another reason for the Court to determine that the Church is in fact a traditional public forum.

Plaintiffs' claim that the *Pruneyard* standard is a "high bar" is simply inaccurate. (Opp. p. 22) *Pruneyard* and its progeny have consistently held that there must be a balancing test between the competing interests of the property owner and society to determine whether there is a constitutional right to engage in the challenged activity. See e.g. *Trader Joe's Co. v. Progressive Campaigns*, 73 Cal.App.4th 425, 433 (Cal. 1999)

Plaintiffs materially miscite *Park Mgmt. Corp v. In Def. of Animals*, 36 Cal.App.5th 649 (Cal. 2019) in that they present an example as though it is a necessary condition. *Park Mgmt.* does not require a property to be open like public streets or parks to qualify as "open" per *Pruneyard*. Rather, *Park Mgmt.* indicates that "at the highest level of generality, private property constitutes a public forum if the property is open to the public in the same manner as public streets or parks."

Plaintiffs misrely on *Church of Christ in Hollywood v. Superior Court*, 99 Cal.App.4th 1244 (Cal. 2002) ("*CCH*"). There, a former congregant engaged in months of disruptive conduct targeting church members. The church formally terminated her membership, gave her written notice, and expressly told her she would be a trespasser if she returned. She continued the conduct anyway. *Id.* at 1249-1250.

Here, there was no notice to Defendants that they would be deemed trespassers if they expressed political opinions in opposition to the atheist former Israeli politician who was giving a presentation about geopolitics. Rather, they entered an event open to

the public by first registering. There was no course of conduct like there was in *CCH*. *CCH* is inapplicable and does not stand for the contention that all churches are not traditional public forums. Indeed, *CCH* did not even cite to *Pruneyard*. Importantly, *Pruneyard* provides greater protections to Californians than the First Amendment. *Robins v. Pruneyard*, 23 Cal.3d 899, 910 (Cal. 1979)

5. <u>Defendants' Position Would Not Violate the First Amendment</u>.

Plaintiffs spend about 8 pages insisting that Defendants' theory would violate the First Amendment. This misstates Defendants' position, which simply states that Plaintiffs' claim for trespass against Defendants must fail. Defendants do not demand that Plaintiffs provide them a forum for their political views. Section II of Plaintiffs' brief goes far beyond the narrow issues that are before the Court as to the anti-SLAPP motion. Defendants are certainly not seeking a ruling to resolve the merits of Plaintiffs' Dispensationalist theology especially since Defendants did not interfere with worship services as the protest only began after Dr. Wilf began speaking and the prayers and hymns were finished. This is a fundamental problem in Plaintiffs' trespass claim that they have not adequately addressed.

The same section devotes substantial time to insist that Plaintiffs have the right to hold certain religious beliefs. That uncontroversial statement does not address the fundamental problem with Plaintiff's trespass claim. Specifically, it is undisputed that Plaintiffs can believe that their political support for Israel has religious justifications. The point is that Plaintiffs should not be permitted to impose those beliefs on others to silence them by improperly weaponizing California's trespass laws. Defendants do not assert "a construction of California law that would violate the Establishment Clause by commandeering the content of religious services" as Plaintiffs' argue. Rather, the attempted imposition is the other way around: Plaintiffs hope to commandeer laws to suppress pro-Palestinian protest because they believe their anti-Palestinian/pro-Israel opinions have religious support.

6. The Court Should Not Invalidate California's anti-SLAPP Statute.

The Court should not overturn volumes of jurisprudence holding California's anti-SLAPP protections are applicable to California claims raised in Federal Court. See *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022)

## III. CONCLUSION

Plaintiffs' arguments against well-established law confirm that this case is an attempt to erode constitutional protections by portraying political opinions as religious worship and improperly weaponizing California trespass causes of action. Defendants' respectfully request that the Court grant the anti-SLAPP motion without leave to amend as Plaintiffs have already enjoyed leave to amend.

DATED: May 8, 2026

RESPECTFULLY SUBMITTED,

LAW OFFICES OF THOMAS B. HARVEY

BY: */s/Thomas B. Harvey*

Thomas B. Harvey

LAW OFFICES OF BEN GHARAGOZLI

BY: */s/Ben Gharagozli*

Ben Gharagozli

Attorneys for Defendants

# DECLARATION OF BEN GHARAGOZLI

I, Ben Gharagozli, declare:

1. My name is Ben Gharagozli, and my business address is 7655 Winnetka Avenue, #2010 Winnetka, CA 91306. I am not a party to this lawsuit.

2. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

3. I represent the Defendants in this action.

4. At no point in time after the filing of the anti-SLAPP motion as to Plaintiffs' First Amended Complaint in this action did Plaintiff's counsel contact me to meet and confer regarding whether our anti-SLAPP motion is a purely legal challenge or a factual challenge pursuant to *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017).

5. On April 23, 2026, we met and conferred at Plaintiffs' counsel request on other matters in this case. At no point in time did Plaintiffs' counsel inquire as to whether our anti-SLAPP motion is a purely legal challenge or a factual challenge pursuant to *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017).

6. I have received no requests for discovery from Plaintiffs' counsel.

7. Had Plaintiffs' counsel asked me to clarify whether our anti-SLAPP motion is a purely legal challenge or a factual challenge pursuant to *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017), I would have confirmed that it was a factual challenge in light of the affidavits attached to the motion that dispute liability.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct. Executed this 8th day of May 2026.

*/s/Ben Gharagozli*

Ben Gharagozli

## DECLARATION OF THOMAS B. HARVEY

I, Thomas B. Harvey, declare:

1. My name is Thomas B. Harvey and my business address is 365 E. Avenida de Los Arboles, #226, Thousand Oaks, CA 91360. I am not a party to this lawsuit.

2. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

3. I represent the Defendants in this action.

4. At no point in time after the filing of the anti-SLAPP motion as to

Plaintiffs' First Amended Complaint in this action did Plaintiff's counsel contact me to meet and confer regarding whether our anti-SLAPP motion is a purely legal challenge or a factual challenge pursuant to *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017).

5. On April 23, 2026, we met and conferred at Plaintiffs' counsel request

on other matters in this case. At no point in time did Plaintiffs' counsel inquire as to whether our anti-SLAPP motion is a purely legal challenge or a factual challenge pursuant to *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017).

6. I have received no requests for discovery from Plaintiffs' counsel.

7. Had Plaintiffs' counsel asked me to clarify whether our anti-SLAPP

motion is a purely legal challenge or a factual challenge pursuant to *Planned Parenthood Fed'n of Am. V. Ctr. For Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2017), I would have confirmed that it was a factual challenge in light of the affidavits attached to the motion that dispute liability.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct. Executed this 8th day of May 2026.

*/s/Thomas B. Harvey*

Thomas B. Harvey